**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

No. 18-2220

JORGE ALCAREZ, individually and on behalf of all others similarly situated,
Plaintiff-Appellee,

v.

AKORN, INC., et al.,
Defendants-Appellees.

APPEAL OF: THEODORE H. FRANK, Intervenor-Frank

No. 18-2221

SEAN HARRIS, On behalf of himself and all others similarly situated,
Plaintiff-Appellee,

v.

AKORN, INC., et al.,
Defendants-Appellees.

APPEAL OF: THEODORE H. FRANK, Intervenor-Frank

On Appeal from the United States District Court for the Northern District of Illinois,
Nos. 1:17-CV-05017, 1:17-CV-05021, Trial Judge Thomas M. Durkin

# Petition for Rehearing or Rehearing *En Banc* of Appellees Jorge Alcarez and Sean Harris


**FARUQI & FARUQI LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Avenue
New York, New York 10017
Tel. No. (212) 983-9330

*Attorneys for Appellee Sean Harris in No. 18-2221*

**LEVI & KORSINSKY LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street NW Suite 115
Washington, D.C. 20007
Tel. No. (202) 524-4290

*Attorneys for Appellee Jorge Alcarez in No. 18-2220*

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-2221

Short Caption: Harris v. Akorn, Inc., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Sean Harris

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Faruqi & Faruqi, LLP and Kahn Swick & Foti, LLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: s/ James M. Wilson, Jr. Date: April 29, 2024

Attorney's Printed Name: James M. Wilson, Jr.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 685 Third Avenue, 26th Floor

New York, NY 10017

Phone Number: 212-983-9330 Fax Number: 212-983-9331

E-Mail Address: jwilson@faruqilaw.com

Save As | Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-2220

Short Caption: Alcarez v. Akorn, Inc., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Jorge Alcarez

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Levi & Korsinsky LLP, DiTommaso Lubin, P.C., & O'Bell Law Firm, LLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: s/ Elizabeth K. Tripodi Date: April 29, 2024

Attorney's Printed Name: Elizabeth K. Tripodi

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: REVISED - 1101 Vermont Ave., NW Suite 700

REVISED - Washington, D.C. 20005

Phone Number: 202-524-4290 Fax Number: 202-333-2121

E-Mail Address: etripodi@zlk.com

rev. 12/19 AK

## TABLE OF CONTENTS

PRELIMINARY AND RULE 35(b) STATEMENT ..... 1

STATEMENT OF THE CASE ..... 4

REASONS FOR GRANTING THE PETITION ..... 6

I. The Panel Concluded That Frank Suffered A Direct Injury To His Akorn Share Value Without Frank Making the Argument And No Evidence In Support ..... 7

II. Frank Waived The Argument Of A Share Price Impact Because He Did Not Raise The Argument ..... 9

III. Any Alleged Injury Could Only Have Been To Akorn ..... 11

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Abbott Labs. Derivative S'holders Litig.*,
325 F.3d 795 (7th Cir. 2003) .................................... 11

*In re Allstate Corp. Sec. Litig.*,
966 F.3d 595 (7th Cir. 2020) .................................... 2

*Andersen v. Thieret*,
903 F.2d 526 (7th Cir. 1990) .................................... 10

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .................................... 2, 8

*Burks v. Lasker*,
441 U.S. 471 (1979) .................................... 11

*Crochet v. Cisco Sys., Inc.*,
02-1357 (La. App. 3 Cir. 5/28/03), 847 So. 2d 253 .................................... 11

*Doe by & through Doe v. Apple Inc.*,
No. 3:22-CV-2575-NJR, 2023 WL 3301795 (S.D. Ill. May 8, 2023) .................................... 10

*Expedited, Inc. v. Korunovski*,
No. 1-19-2323, 2021 IL App (1st) 192323-U .................................... 10

*Guillory v. Broussard*,
15-0888 (La. App. 3 Cir. 5/18/16), 194 So. 3d 764 .................................... 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .................................... 2

*House v. Akorn*,
No. 17-C-5018, slip op. (N.D. Ill. Sep. 25. 2018), ECF No. 53.................................... 13

*Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
95-1630 (La. App. 4 Cir. 2/12/97), 689 So.2d 650 .................................... 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................... 1, 6

*Paul Piazza & Son, Inc. v. Piazza*,
11-0548 (La. App. 5 Cir. 12/28/11), 83 So. 3d 1066 .................................... 11, 12

*Scaffidi & Chetta Entm't v. Univ. of New Orleans Found.*,
04-1046 (La. App. 5 Cir. 2/15/05), 898 So. 2d 491 ................................................ 12

*Seidel v. Allegis Corp.*,
702 F. Supp. 1409 (N.D. Ill. 1989) ........................................................................ 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016)....................................................... 6

*Steel Co. v. Citizens for Better Env't*,
523 U.S. 83 (1998) .................................................................................................. 6

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
581 U.S. 433 (2017) ................................................................................................ 6

*United States v. Husband*,
312 F.3d 247 (7th Cir. 2002) .................................................................................. 10

*United States v. SCRAP*,
412 U.S. 669 (1973) ................................................................................................ 3

*West v. Prudential Sec. Inc.*,
282 F.3d 935 (7th Cir. 2002) .................................................................................... 8

*Williams v. Dieball*,
724 F.3d 957 (7th Cir. 2013) .................................................................................... 9

*Willis v. Harrah's Illinois Corp.*,
182 F.3d 923 (7th Cir. 1999) .............................................................................. 9, 10

**Statutes**

La. Rev. Stat. Ann. § 12:1-742 cmt.-2014 Rev. (West) ............................................... 13

La. Stat. Ann. §§ 12:1-740 - 12:1-747 (2015)............................................................. 12

La. Stat. Ann. § 12:1-742 (2015)............................................................................... 13

## PRELIMINARY AND RULE 35(b) STATEMENT

This appeal and Plaintiffs' petition for rehearing *en banc is* of exceptional importance because it addresses a core constitutional concept whether and under what evidentiary standard a shareholder has standing under Article III to intervene under the Federal Rules of Civil Procedure in non-certified putative class action that has been voluntarily dismissed under Fed. R. Civ. P. 41(a).

The Panel vacated the District Court order that had denied Theodore Frank's ("Frank") motion to intervene, holding that Frank had standing to intervene because the market price of his Akorn, Inc. ("Akorn" or "Company") shares, that he purchased for the purpose of intervening, were affected by the merger and $322,500 mootness fee (the "Mootness Fee"). Opinion ("Op.") 9. "A concrete loss, caused by the complained-of conduct and remediable by the judiciary, supplies standing." Op. at 6, citing *Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016), *as revised* (May 24, 2016); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). The "upshot" according to the Panel when a mootness fee is paid is that the "payment *diminishes (though only a little) the market price of each share*." Op. 4 (emphasis added). The Panel concluded that "Frank suffers some loss from diversion of corporate money, which affects the *value of his shares*." Op. 6 (emphasis added). The Panel remanded the case with instructions for the District Court to treat him as an intervenor and permit him to seek relief pursuant to Rule 60(b). Op. 13.

Appellees Jorge Alcarez ("Alcarez") and Sean Harris ("Harris") ("Appellees") seek Panel rehearing or rehearing *en banc* of the Panel's opinion. The Panel's newly adopted supposed harm to Frank's stock value that supposedly was caused by the

Mootness Fee in its Opinion was not claimed by Frank nor considered by the District Court. Appellees never had the opportunity to address the Panel's conclusion, that the payment of the Mootness Fee impacted the market price of Akorn shares causing Frank an injury that satisfies Article III. In an open and developed securities market, available material information regarding the company and its business informs a company's stock price. *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988). "[M]arket professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014) (quoting *Basic*, 485 U.S. at 247 n.28). The Seventh Circuit has accepted that in an efficient market, prices reflect publicly available material information. *See e.g., In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 600, 605 (7th Cir. 2020).

Here, Frank did not argue or present any evidence that the Mootness Fee had an impact on the market price of his Akorn shares in support of his motion to intervene. Frank argued only that plaintiffs' attorneys breached duties owed to him and were unjustly enriched at the Company's expense by the Mootness Fee – a claimed injury that is derivative not direct. *See e.g.,* Frank App. Br. 43; A186, A212-13; Appellees' App. Answering Br. 18-20, 22-25. Moreover, Appellees disclaimed any Mootness Fee.

There is no record evidence that the harm to Frank fashioned by the Panel exists. In fact, historical price data demonstrates that Akorn's stock price increased after the Mootness Fee was made public on September 15, 2017. *See* Exhibit A.

There is no evidence on Akorn's stock price performance in the record and there is no indication in the Opinion that the Panel otherwise considered evidence of stock price performance of Akorn stock in order to conclude that the value of Frank's Akorn stock suffered due to payment of the Mootness Fee. Although as stated by the Panel, even an "identifiable trifle" may suffice for standing (*United States v. SCRAP,* 412 U.S. 669, 688-90 & n.14 (1973)), the evidence shows that such trifle does not exist here. Since the value of Frank's shares increased after the disclosure of the Mootness Fee, applying the Panel's own rationale, Frank could not have suffered a loss in the value of his stock that was caused by the payment of the Mootness Fee. The Panel opined that Frank "suffers some loss from diversion of corporate money, which affects the value of his shares" without any evidence that the Mootness Fee had any impact on the value of his shares, and without evidence or any claim by Frank of such damage. Op. 6.

Appellees respectfully request that the Court grant rehearing or rehearing *en banc* and reverse and hold that Frank failed to demonstrate harm affording him standing to intervene. Alternatively, Appellees respectfully request that this Court remand the matter to the District Court for further proceedings – including the exchange of expert financial analysis – to determine what, if any, damage to the value of his shares Frank suffered as a result of the Mootness Fee. This is an entirely new basis for standing asserted by the Panel, not Frank, and Appellees should be afforded the opportunity to challenge it.

## STATEMENT OF THE CASE

On April 24, 2017, Akorn's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Fresenius Kabi AG ("Fresenius Kabi") and its wholly-owned subsidiary, Quercus Acquisition, Inc. ("Merger Sub" and, together with Fresenius Kabi, "Fresenius"). Pursuant to the terms of the Merger Agreement, shareholders of Akorn would have received $34.00 in cash for each share of Akorn common stock (the "Transaction").

On May 22, 2017, defendants filed a proxy statement (the "Proxy" or "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Transaction. In June of 2017, stockholders of Akorn filed multiple actions in federal courts in Louisiana and Illinois challenging the sufficiency of the disclosures made in the Proxy Statement. Each plaintiff generally alleged that the Proxy Statement omitted material information with respect to the Transaction, which rendered that document false and misleading. The plaintiffs each further alleged that defendants had violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement

The plaintiffs in the six constituent actions reached agreement to coordinate their efforts, and, on June 14, 2017, certain plaintiffs sent a letter to Akorn demanding that it remedy the disclosure deficiencies in the Preliminary Proxy. On June 15, 2017, Akorn filed a definitive proxy statement (the "Definitive Proxy") that addressed several of the major disclosure deficiencies identified in the various

complaints and in the demand letter.

On June 20, 2017, Frank purchased 1000 shares of Akorn, ostensibly for the purposes of seeking to intervene in the shareholder actions. *See* A182 ¶14. On June 20, 2017, Akorn's stock price closed at $33.41 per share. Ex. A.

After negotiations between the parties, on July 10, 2017, Akorn filed a Form 8-K (the "8-K") that included the agreed-upon supplemental disclosures (together with the additional disclosures included in the Definitive Proxy, the "Supplemental Disclosures"). Akorn's stock price closed up over the price of the previous trading day at $33.56, and the following trading day, the price continued to rise, closing at $33.60. Ex. A.

On July 14, 2017, plaintiffs voluntarily dismissed their cases without prejudice. A160. The stipulations of dismissal referenced the retention of jurisdiction for the District Court to resolve any fee application. On July 17, 2017, the next trading day after the cases were dismissed, the market price of Akorn stock closed at $33.70, up from the previous day's close of $33.645. *Id.*

On September 15, 2017, the parties filed a Stipulation that disclosed the Mootness Fee. A156-62. On September 14, 2017, Akorn shares closed at $32.97 per share and on September 15, 2017 – the day the parties filed the stipulation disclosing the Mootness Fee – Akorn's share price closed up at $33.10 and continued to trade higher than $33.00 per share through the end of September. Ex. A.

The remaining facts concerning the various filings by the Appellees and Frank and current posture have been previously thoroughly briefed and are not repeated here.

## REASONS FOR GRANTING THE PETITION

In order to intervene, Frank must have standing. *See e.g., Spokeo*, 578 U.S. at 338; *see also Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 433 (2017) ("A litigant seeking to intervene as of right under Rule 24(a)(2) must meet the requirements of Article III standing if the intervenor wishes to pursue relief not requested by a plaintiff"). Frank had to demonstrate that he has an injury in fact, which means an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *See e.g.*, *Lujan*, 504 U.S. at 560; *see also Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 102-03 (1998) (noting that injury in fact is "[f]irst and foremost" of standing's three elements).

Throughout this litigation, Frank only argued that his interest in the case – and his standing to intervene - arose from the harm he suffered as a result of "repeated and ongoing breaches of fiduciary duty by attorneys who purported to represent his individual interests." Frank App. Reply Br. 11-12. Frank claimed that he suffered harm due to the "mootness fee racket" through which Appellees unjustly enrich themselves through the payment of the Mootness Fee. *Id* at 12. Appellees disclaimed the Mootness Fee in their actions.

Frank never claimed that payment of the Mootness Fee damaged the market value of his Akorn stock. Frank never proffered any model to calculate his

recoverable loss to his investment arising from the decline Akorn stock price as result of the disclosure of this information; the Panel created this purported damage theory. Frank only claimed damage from actual payment of the $322,500 Mootness Fee – a “damage" incurred by the Company.

Holding that Frank’s interest for intervention arose from an entirely different theory of harm – the purported damages to the market price of his Akorn stock caused by the payment of the Mootness Fee - without Frank having argued such and without Appellees having an opportunity to challenge this theory is fundamentally unfair. Indeed, Frank’s failure to raise this argument should have constituted a waiver and the argument should not have been crafted by the Panel to salvage Frank’s effort to intervene. Without this direct harm caused by the payment of the Mootness Fee, Frank is left with his derivative claim, *i.e.*, a payment by the Company out of the corporate coffers that at best may have harmed the corporation. Such a derivative claim does not provide standing for Frank to intervene. Therefore, the District Court’s order denying Franks’ motion to intervene should be upheld.

Alternatively, the Court should remand the case for the District Court for further proceedings – including the exchange of expert financial analysis – to determine what, if any, damage to the value of his shares Frank suffered as a result of the Mootness Fee.

## I. The Panel Concluded That Frank Suffered A Direct Injury To His Akorn Share Value Without Frank Making the Argument And No Evidence In Support

Frank argued that his injury arose from the purported breach of duties by Appellees’ attorneys and the payment of the Mootness Fee, which unjustly enriched

Appellees' attorneys. Frank App. Reply Br. 7. Appellees disputed that Frank had standing under this argument because the purported injury – i.e., the payment of the Mootness Fee – was to the Company not to Frank.

The Panel conceded that the Mootness Fee "is a loss to the corporate treasury". Op. 7. Nevertheless, the Panel found that Frank was injured by holding that the Mootness Fee "payment diminishes (though only a little) the market price of each share." Op. 4. The Panel concluded that Frank had standing to intervene because "Frank suffers some loss from diversion of corporate money, which affects the value of his shares." Op. 6.

Frank never argued this theory of standing and no party presented evidence regarding the impact of the Mootness Fee on Akorn's stock price, which even the Panel recognized was "small beer in a $4 billion transaction". Op. 6. As recognized by the Seventh Circuit:

> *Basic* describes a mechanism by which public information affects stock prices, and thus may affect traders who did not know about that information. Professional investors monitor news about many firms; good news implies higher dividends and other benefits, which induces these investors to value the stock more highly, and they continue buying until the gains are exhausted. With many professional investors alert to news, markets are efficient in the sense that they rapidly adjust to all public information; if some of this information is false, the price will reach an incorrect level, staying there until the truth emerges. This approach has the support of financial economics as well as the imprimatur of the Justices: few propositions in economics are better established than the quick adjustment of securities prices to public information. See Richard A. Brealey, Stewart C. Myers & Alan J. Marcus, *Fundamentals of Corporate Finance* 322–39 (2d ed.1998).

*See West v. Prudential Sec. Inc.*, 282 F.3d 935, 938 (7th Cir. 2002).

The fundamental premise of the Panel's Opinion, that the Mootness Fee

negatively impacted Akorn's stock price was never supported by evidence and on basic review of the Akorn's stock price is unfounded. Ex. A. Akorn's stock price increased after public disclosure of the Mootness Fee on September 15, 2017, which conflicts with the premise of the Panel's Opinion that the payment of a mootness fee diminishes "*…the market price of each share*." Op. 4.

On September 14, 2017, Akorn shares closed at $32.97 per share and on September 15, 2017 – after the parties filed the stipulation disclosing the agreement of the Mootness Fee – Akorn's share price closed up at $33.10 and continued to trade higher than $33.00 per share through the end of September. Exhibit A.

Determining the potential stock price impact of public news about a company involves the exchange of expert financial analysis and a full evidentiary hearing on the matter. None of this has been done in this case, because the Panel was the first to assert this basis for standing. This new untested theory of injury should not have been adopted by the Panel to salvage Frank's motion to intervene. If the Court will not uphold the District Court's denial of Frank's motion for intervention, Appellees respectfully ask this Court to remand this case to the District Court for further evidentiary proceedings to determine what, if any, impact the disclosure of the Mootness Fee had on Akorn's stock price.

## II. Frank Waived The Argument Of A Share Price Impact Because He Did Not Raise The Argument

Frank's failure to raise this argument either at the District Court level or on appeal waives the argument. *See e.g.*, *Williams v. Dieball*, 724 F.3d 957, 961–62 (7th Cir. 2013) (appellant failed to raise argument in district court); *see also Willis*

*v. Harrah's Illinois Corp.*, 182 F.3d 923 (7th Cir. 1999) (the appellate court concluded, however, that this claim was waived on appeal because Willis never argued that the statements were direct evidence of discriminatory animus); *United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002), (holding that "any issue that could have been but was not raised on appeal is waived); *Andersen v. Thieret*, 903 F.2d 526, 531 n.2 (7th Cir. 1990) (holding that issue of whether magistrate in federal habeas proceeding applied incorrect quantum of proof in deciding that petitioner's confession was voluntary was waived on appeal, where petitioner never raised argument except in response to questions in oral argument.). In *Doe by & through Doe v. Apple Inc.*, No. 3:22-CV-2575-NJR, 2023 WL 3301795, at *5 (S.D. Ill. May 8, 2023), in finding that a court could not address such issues sua sponte, the court cited to two Illinois State Court decisions which held that "the circuit courtf's jurisdiction, while plenary, is not boundless, and where no justiciable issue is presented to the court through proper pleadings, the court cannot adjudicate an issue *sua sponte*" and that "[o]rders entered by court in absence of justiciable issue properly presented … by the parties are void since they result from court action exceeding its jurisdiction" (citing to *Ligon v. Williams*, 264 Ill.App.3d 701, 202 Ill.Dec. 94, 637 N.E.2d 633, 638 (Ill. App. Ct. 1994)). *See also Expedited, Inc. v. Korunovski*, No. 1-19-2323, 2021 IL App (1st) 192323-U, ¶ 47, *appeal denied by* 451 Ill.Dec. 415, 183 N.E.3d 872 (Table) (Ill. 2021) (quoting *Ligon* and finding that a court cannot adjudicate a claim that is not pleaded against a party)). The Court

advanced this argument for the first time, and Frank should not be permitted to now adopt it.

## III. Any Alleged Injury Could Only Have Been To Akorn

In general, and specifically under Louisiana law,[1] a shareholder does not have a general right to sue directly for harms to the corporation in which he or she owns an interest. *Guillory v. Broussard*, 15-0888 (La. App. 3 Cir. 5/18/16), 194 So. 3d 764, 780, *reh'g denied* (Aug. 3, 2016), *writ denied by* 16-1707 (La. 11/29/16), 210 So. 3d 806. When the alleged loss to the individual shareholder is the same loss that would be suffered by other shareholders, a shareholder does not have a direct cause of action. *Paul Piazza & Son, Inc. v. Piazza*, 11-0548 (La. App. 5 Cir. 12/28/11), 83 So. 3d 1066, 1070, *writ denied by* 12-0261 (La. 3/30/12), 85 So. 3d 123 ("[I]n situations where the alleged loss to the individual shareholder is the same loss that would be suffered by other shareholders, the loss is considered to be indirect"); *see also Crochet v. Cisco Sys., Inc.*, 02-1357 (La. App. 3 Cir. 5/28/03), 847 So. 2d 253, 256, *writ denied by* 03-1838 (La. 10/17/03), 855 So. 2d 765 (noting that under Louisiana jurisprudence, if a shareholder can recover in a suit only by showing that the corporation was injured, then the suit is derivative in nature, even if the corporate

---

1 In cases involving substantive corporate law issues, the law of a corporation's state of incorporation is controlling. *See Seidel v. Allegis Corp.*, 702 F. Supp. 1409, 1410–11 (N.D. Ill. 1989). Akorn is a Louisiana corporation and, thus, any substantive claims against it, or on its behalf, are governed by Louisiana law. *See Burks v. Lasker*, 441 U.S. 471, 478-79 (1979); *In re Abbott Labs. Derivative S'holders Litig.,* 325 F.3d 795, 804 (7th Cir. 2003) ("It is the law of the state of incorporation which controls these substantive rights and governs what excuses are adequate for failure to make demand"). Accordingly, the substance of the issues raised by Frank's motion and proposed complaint must be adjudicated under Louisiana law.

injury does cause indirect harm to the shareholder, while if a recovery can be granted without a proof of a corporate loss, then the suit is considered to be direct).

Rather than through direct claims, Louisiana law requires that a shareholder bring claims to enforce a right on behalf of a corporation ***derivatively***, pursuant to the Louisiana Business Corporation Act. *See* La. Stat. Ann. §§ 12:1-740 - 12:1-747 (2015). Indeed, and most applicable to the circumstances here, Louisiana law holds that claims arising from attorneys' fees paid by a corporation belong to the corporation, not to stockholders, and may only be brought derivatively. *Cf. Piazza*, 83 So. 3d at 1070 (claims arising from corporate attorneys' fees are indirect in nature and must be asserted by the corporation itself or derivatively on behalf of the corporation).

Frank lacked standing when he attempted to intervene directly to recover for alleged acts committed against or causing damage to Akorn. *See Scaffidi & Chetta Entm't v. Univ. of New Orleans Found.*, 04-1046 (La. App. 5 Cir. 2/15/05), 898 So. 2d 491, 495, *writ denied by* 05-0748 (La. 5/6/05), 901 So. 2d 1102; *Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 95-1630 (La. App. 4 Cir. 2/12/97), 689 So.2d 650, 654, *writ denied*, 97-0659 (La. 4/25/97), 692 So.2d 1090. The purported injuries that he alleged were suffered by Akorn itself. The relief sought -- the disgorgement to Akorn of the Mootness Fee -- reflected the fact that these funds (and any claims arising therefrom) belonged to Akorn, and not to Frank. Accordingly, Frank could only properly sue to recover losses to Akorn through a shareholder's derivative suit. Moreover, Appellees disclaimed the Mootness Fee. Frank's claims would have to be

pleaded under Fed. R. Civ. P. 23.1 and conform to Louisiana's substantive law for the pleading of such claims, and would not arise in the actions where the Mootness Fee had been disclaimed.[2]

As explained in District Court's Order of September 25, 2018 denying Frank's right to intervene:

> [T]he injury Frank identifies is not to the class members *qua* class members. Rather, it is an injury to *Akorn* that the class members might realize through their shares of Akorn. But an injury to Akorn can only be pursued by class members through a derivative action, which is not the procedural posture of any of the six cases. And in any event, the fact that all the class members are Akorn shareholders does not mean that plaintiffs' counsel's fiduciary duty to the putative class extends to a duty to refrain from injuring Akorn. Indeed, plaintiffs' claims are designed to compel Akorn to act in a way it otherwise had not, thereby causing some form of expense and injury. Clearly, the class members' claims and Akorn's interests are not coextensive. As such, there is a break in the causal chain connecting the class members to Akorn that Frank relies upon to support his theory of intervention.

*See House v. Akorn*, No. 17-C-5018, slip op. at 6 (N.D. Ill. Sep. 25. 2018) (order denying motion to intervene), ECF No. 53. Frank's claimed injury was derivative, not direct. This new untested theory of injury should not have been adopted by the Panel to salvage Frank's motion to intervene. If the Court will not uphold the District Court's denial of Frank's motion for intervention, Appellees respectfully ask this Court to remand this case to the District Court for further evidentiary proceedings to

---

[2] Louisiana is a "universal demand" state, meaning that it requires, *without exception*, a shareholder to make a pre-suit demand on the corporation's board to institute a lawsuit. Under Louisiana Law, no shareholder may commence a derivative proceeding until a written demand has been made upon the corporation to take suitable action. La. Stat. Ann. § 12:1-742 (2015). There is no statutory exception to this requirement. *See* La. Rev. Stat. Ann. § 12:1-742 cmt.-2014 Rev. (West) ("Demand is always required, and so never is excused as futile.").

determine what, if any, impact the disclosure of the Mootness Fee had on Akorn's stock price.

## CONCLUSION

For the foregoing reasons, this Court should grant the petition.

Dated: April 29, 2024

**Respectfully,**

**FARUQI & FARUQI LLP**

By: */s/ James M. Wilson, Jr.*

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Avenue
New York, New York 10017
Tel No. (212) 983-9330

*Attorneys for Appellee Sean Harris in No. 18-2221*

\- and -

**LEVI & KORSINSKY LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 Vermont Ave., NW Suite 700
Washington, D.C. 20005
Tel. No. (202) 524-4290

*Attorneys for Appellee Jorge Alcarez in No. 18-2220*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 40(b)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 3,793 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b) and the type-style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the 365 version of Microsoft Word in 12 point Century Schoolbook font.

Dated: April 29, 2024

*/s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

☑

## CERTIFICATE OF SERVICE

**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on April 29, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ James M. Wilson, Jr.

☐

## CERTIFICATE OF SERVICE

**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on ____________________, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

| counsel / party: | address: |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

s/____________________________________

# PANEL SLIP OPINION

In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 18-2220, 18-2221, 18-2225, 18-3307, 19-2401, and 19-2408

JORGE ALCAREZ, *et al*., as representatives of a class,
*Plaintiffs-Appellees*,

*v.*

AKORN, INC., *et al*.,
*Defendants-Appellees*.

Appeals of THEODORE H. FRANK, SHAUN A. HOUSE, and DEMETRIOS PULLOS

Appeals from the United States District Court for the Northern District of Illinois, Eastern Division.
Nos. 17 C 5016, 5017, 5018, 5021 & 5026 — **Thomas M. Durkin**, *Judge*.

ARGUED NOVEMBER 6, 2018, and APRIL 14, 2020 — DECIDED APRIL 15, 2024

Before EASTERBROOK and WOOD, *Circuit Judges*.*

* Circuit Judge Kanne, a member of the panel, died after the appeals were argued. They are being decided by a quorum. 28 U.S.C. §46(d).

EASTERBROOK, *Circuit Judge*. Six suits, filed under the federal securities laws, present questions about "mootness fees" in federal litigation. Akorn, Inc., asked its investors to approve a merger (valued at more than $4 billion) with Fresenius Kabi AG. Plaintiffs assert that the proxy statement (82 pages long, with 144 pages of exhibits) should have contained additional details, whose absence violated §14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78n(a). Within weeks Akorn amended its proxy statement to add some disclosures, though it insisted that none of these additions was required by law.

All six plaintiffs then moved to dismiss their suits, asserting that the additional disclosures mooted their complaints. They did not notify the proposed classes (five of the six suits had been filed as class actions) or seek judicial approval under Fed. R. Civ. P. 23(e). Different district judges entered orders of dismissal between July 17 and July 25, 2017.

Akorn's shareholders overwhelmingly approved the merger, with only 0.1% of all votes cast against. Many of the proxies had been voted before Akorn's supplemental disclosures; plaintiffs did not protest. On September 15 all six plaintiffs told the district court that any claim to attorneys' fees and costs had been resolved by a payment of $322,500, which counsel would divide. Those are the mootness fees. The proposed merger was abandoned for reasons unrelated to these suits, but that does not affect the dispute about what to do with this money.

Theodore Frank, one of Akorn's shareholders, learned through the press that Akorn had paid mootness fees and on September 18, 2017, filed a motion to intervene. He asked the court to require counsel to disgorge the money as unjust

enrichment (since they had not achieved any benefit for the investors). He also asked the court to enjoin the lawyers who represented the six plaintiffs to stop filing what Frank calls strike suits, whose only goal is to extract money for counsel. Frank contends that the suits amount to abuse of the legal process. Indeed, this court has remarked that litigation "that yields fees for class counsel and nothing for the class is no better than a racket. It must end." *In re Walgreen Co. Stockholder Litigation*, 832 F.3d 718, 724 (7th Cir. 2016) (cleaned up). But litigation of this kind has not ended since *Walgreen*.

Delaware, where most suits seeking extra disclosure had been filed, decided that they would be subject to "disfavor in the future unless the supplemental disclosures address a plainly material misrepresentation or omission". *In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884, 898 (Del. Ch. 2016). Delaware already had limited the payment of mootness fees unless the suit was meritorious. *In re Sauer-Danfoss Inc. Shareholders Litigation*, 65 A.3d 1116, 1123 (Del. Ch. 2011). The combination of *Sauer-Danfoss* with *Trulia* initially led to a decline in suits seeking more disclosure for mergers. In 2012 90% of deals worth more than $100 million were challenged in litigation. In 2013 that proportion rose to 96%. *Trulia* knocked it down to 74% in 2016. By 2017 and 2018 the proportion was back to 83%. And the location of the suits changed radically. In 2012 56% of these suits were in Delaware and 34% in federal court. By 2018 only 5% were in Delaware and 92% in federal court. These figures come from Matthew D. Cain, Jill E. Fisch, Steven Davidoff Solomon & Randall S. Thomas, *Mootness Fees*, 72 Vand. L. Rev. 1777, 1787 (2019). By filing in federal court plaintiffs avoid *Trulia*—for federal courts use their own procedures, whether the claim arises under state or federal law. See, e.g., *Shady Grove Orthopedic Associates, P.A. v. Allstate*

*Insurance Co*., 559 U.S. 393 (2010); *Gasperini v. Center for Humanities, Inc*., 518 U.S. 415 (1996); *Mayer v. Gary Partners & Co*., 29 F.3d 330 (7th Cir. 1994).

These six cases illustrate the federal practice. Suits are filed as class actions seeking more disclosure but not contending that any of the existing disclosures is false or materially misleading. Such a claim is problematic under federal securities law. See, e.g., *Macquarie Infrastructure Corp. v. Moab Partners, L.P*., No. 22–1165 (U.S. Apr. 12, 2024) (nondisclosure does not violate Rule 10b–5). Counsel for the plaintiffs and counsel for the firms involved agree on additional disclosures. The suits are then dismissed and mootness fees paid. Plaintiffs do not move for class certification, and Rule 23(e), which requires judicial approval only when a certified class action is settled or dismissed, does not come into play. The class is not notified.

Because plaintiffs and defendants agree on the fees, the judge is not asked to award anything. A statute providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class", 15 U.S.C. §78u–4(a)(6) (part of the Private Securities Litigation Reform Act or PSLRA), does not apply, because the judge does not "award" fees. And if a class member finds out and objects, as Frank did, he is met with the response that the suit is moot and there is nothing to object *to*. The upshot: money moves from corporate treasuries to plaintiffs' lawyers; the investors get nothing, yet the payment diminishes (though only a little) the market price of each share. That's why *Walgreen* called this "no better than a racket." But with the judiciary and investors cut out of the

process, they cannot do anything about it. Or so class counsel insists.

Frank asked the judge to do something, such as ordering counsel to disgorge unearned money or issuing an injunction blocking mootness fees in future cases. Before the district judge could rule, counsel for three of the six plaintiffs disclaimed their portions of the $322,500. The district judge then denied Frank's motion to intervene in those cases, stating that, because he did not anticipate awarding any of the remedies Frank requested, intervention would be "moot." Frank's appeals were orally argued in November 2018.

We put those appeals on hold pending the disposition of the three remaining cases, in which the lawyers wanted some share of the fund (which one of them was holding for the group's benefit). In these three cases, the district judge again denied Frank's motion to intervene but permitted him to participate as *amicus curiae*. The judge took to heart the admonition in *Walgreen* that suits seeking extra disclosure should be reviewed immediately after being filed. Acknowledging that he had not done that, he reopened the suits, concluded that the complaints were frivolous, and found that the extra disclosures were worthless to investors. In light of that finding the judge ordered counsel to return Akorn's money. *House v. Akorn, Inc.*, 385 F. Supp. 3d 616 (N.D. Ill. 2019). One of the three lawyers accepted that outcome. Two did not and have appealed. (Technically, the would-be representative plaintiffs have appealed, seeking an order that will let their lawyers divvy up the $322,500 pot.) Frank also has appealed, because he is still not a party and wants additional relief. These three final appeals were argued in April 2020, and all six appeals are now ready for decision.

Shaun House and Demetrios Pullos, the two plaintiffs who have appealed, contend that the district court lacked jurisdiction to reopen a dismissed case. The complaints had been dismissed, none of the litigants was unhappy, and there was nothing more for the court to do, they maintain. Although Fed. R. Civ. P. 60(b) allows judges to reopen cases, that must be done "on motion", according to the Rule, and none of the litigants had filed a motion. But this does not take Frank into account. If he should have been allowed to intervene, he will become a party and may file motions.

Plaintiffs insist that Frank lacks standing—and if Frank lacks standing, then House and Pullos also lack standing, for they will not recover a penny or obtain any other relief whether or not the attorneys collect fees. Their lack of interest in the outcome is so clear that we dismiss their appeals. Frank's standing remains to be decided.

Frank suffers some loss from diversion of corporate money, which affects the value of his shares. The diminution is minimal—$322,500 is small beer in a $4 billion transaction, something like 0.008% of the value of Frank's shares. Still, that is a few cents. The Supreme Court tells us that an "identifiable trifle" suffices for standing. *United States v. SCRAP*, 412 U.S. 669, 688–90 & n.14 (1973).

A concrete loss, caused by the complained-of conduct and remediable by the judiciary, supplies standing. See, e.g., *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). So we have held that a small loss caused by a brief inability to use a credit card after a data breach confers standing. See, e.g., *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016); *Remijas v.*

*Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015). We have held that even a few pennies' loss of potential interest (on a small non-interest-bearing deposit), see *Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019), or a brief delay in receiving income, *Brown v. CACH, LLC*, 94 F.4th 665 (7th Cir. 2024), amounts to a concrete injury. Only a "de minimis loss" threshold for standing would throw out Frank's contention, and the Supreme Court has not announced such a threshold.

Plaintiffs are mistaken to think that Frank needs to make a demand on the board of directors, and pursue a derivative action, rather than intervene personally. True, the $322,500 is a loss to the corporate treasury, but Frank does not contend that Akorn's directors violated their fiduciary duties. The mootness fees may well have cost Akorn less than what its own lawyers would have billed to defend the suits. This means that the directors did not violate either the duty of care or the duty of loyalty when paying to buy peace. Frank contends that class counsel violated their duties *to him* when they used the class allegations as leverage to obtain private benefits. The existence of duties to class members is clear after a judge certifies a class. See *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946–47 (9th Cir. 2011); *Back Doctors Ltd. v. Metropolitan Property & Casualty Insurance Co.*, 637 F.3d 827, 830–31 (7th Cir. 2011); *Martens v. Thomann*, 273 F.3d 159, 173 n.10 (2d Cir. 2001) (Sotomayor, J.) (citing *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 331 (1980)). There is no such duty if the judge has definitively ruled against certification. How things stand while certification is an open question is itself an open question. No matter how that question is resolved, however, Frank's contention that the representative plaintiffs and their lawyers owed duties to him, personally,

need not be processed through the mechanism for derivative litigation.

So was the district judge right to deny Frank's motion to intervene? Certainly not for the reason he gave. "I'm planning to reject your proposed remedies, so your request is moot" is not a recognized legal doctrine. A case becomes moot only when it is *impossible* to grant effective relief. See, e.g., *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). It was possible to grant the sort of relief Frank requested. A decision not to do so is one on the merits, not a conclusion that the case does not present a case or controversy under Article III (which is what it means to call it moot). If "you are going to lose, so your claim is moot" were a proper approach, unsuccessful suits would be dismissed as moot rather than on the merits. That's not how things are supposed to work. See, e.g., *Bell v. Hood*, 327 U.S. 678 (1946).

When the representative plaintiffs and the defendants strike a deal, intervention by a member of the class may be essential to protect the class's interests. We have told judges to grant intervention freely when a class member contends that the representatives (or, more realistically, their lawyers) are misbehaving. See, e.g., *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318–19 (7th Cir. 2012). Indeed, under some circumstances, class members are entitled to appellate review without intervention. See *Devlin v. Scardelletti*, 536 U.S. 1 (2002). Just being in the class entitles a dissatisfied member to appellate review of a contention that the putative representative has acted against the class's interests.

Frank sought to intervene both as of right under Fed. R. Civ. P. 24(a) and permissively under Rule 24(b). The motion

is timely; Frank acted soon after learning of the mootness fees. See *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 279–81 (2022). The district court addressed only his proposal to intervene as of right—and then only in three of the six cases. If the district judge had concluded that Frank lacks "a claim or defense that shares with the main action a common question of law or fact" (Rule 24(b)(1)(B)), appellate review would be deferential. But the district judge did not make any findings on this subject. It seems to us that, as an investor in Akorn whose shares' value was affected by the merger and the mootness fees, Frank has a claim in common with the main action; how could it be otherwise? After all, Frank is a member of the proposed classes. And since class counsel and Akorn are looking out for their own interests rather than those of the class, intervention is appropriate. We hold that Frank is entitled to participate as a party. And that could solve any problem with reopening the judgments, because as a party Frank would be entitled to make the motion required for relief under Rule 60(b). He will have that opportunity on remand.

But the remedies that Frank initially proposed, such as disgorgement or an injunction, are not satisfactory. Disgorgement would be appropriate only if the mootness fees had been retained by counsel, yet the district judge has ordered the money returned. An injunction against repetition might be appropriate with respect to the individual plaintiffs, but Frank wants relief against the lawyers, who are repeat players—and the lawyers are not parties, so they would not be proper objects of injunctive relief unless they were added as parties. And Frank recognizes that Rule 23(e) deals only with cases certified as class actions, which these were not. Perhaps the rules committees of the Judicial Conference should take a

look at the question whether judicial approval should be required to settle or dismiss cases brought as class actions, yet not so certified, but we must enforce the rule as it stands.

As this case proceeded, however, Frank turned his attention to the Private Securities Litigation Reform Act. Two of its provisions may affect the proper treatment of suits filed in quest of mootness fees. We have mentioned one—15 U.S.C. §78u–4(a)(6), which says that attorneys' fees "awarded" by a court "shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." This rule applies to all securities suits "brought" as class actions, whether or not they are so certified. See §78u–4(a)(1) ("The provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."). See also *Higginbotham v. Baxter International Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). Yet §78u–4(a)(6) does not do any work when the defendant pays fees voluntarily rather than insisting on a judicial award.

The other statute, 15 U.S.C. §78u–4(c)(1), tells us:

> **Mandatory review by court**[.] In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

"This chapter" means the whole Securities Exchange Act of 1934 (which is Chapter 2B of Title 15), and the six suits invoked that statute. The caption calls this review "mandatory," and the word "shall" tells us that the caption is accurate. The district court must make the required findings whether or not

a litigant asks. *City of Livonia Employees' Retirement System v. Boeing Co.*, 711 F.3d 754, 757, 761 (7th Cir. 2013). Accord, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009); *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 283–84 (4th Cir. 2006).

The dismissal of each suit was a "final adjudication of the action"; settlements were the reasons for the dismissals, but the statute applies to the judicial action, not to the reason for it. It obliges the judge to determine whether each suit was proper at the moment it was filed. The statute directs the court to the criteria of Fed. R. Civ. P. 11, which entails notice and an opportunity to be heard. Those steps have not been put in motion, given the denial of Frank's motion to intervene, but they should occur on remand.

Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

From Frank's perspective, the very purpose of these suits was "needlessly [to] increase the cost of litigation" (Rule 11(b)(1)) in order to induce Akorn to pay the lawyers to go away. He contends that the suits violate the other three paragraphs as well. And that is essentially what the district judge found when he finally looked at the complaints.

On the current record we are inclined to agree with the district judge's analysis. He wrapped up:

> [T]he Court finds that the disclosures sought in the three complaints at issue [the three for which counsel declined to waive their share of the mootness fees] were not "plainly material" and were worthless to the shareholders. Yet, Plaintiffs' attorneys were rewarded for suggesting immaterial changes to the proxy statement. Akorn paid Plaintiffs' attorney's fees to avoid the nuisance of ultimately frivolous lawsuits disrupting the transaction with [Fresenius]. The settlements provided Akorn's shareholders nothing of value, and instead caused the company in which they hold an interest to lose money. The quick settlements obviously took place in an effort to avoid the judicial review this decision imposes. This is the "racket" described in *Walgreen*, which stands the purpose of Rule 23's class mechanism on its head; this sharp practice "must end." 832 F.3d at 724.
>
> Plaintiffs' cases should have been "dismissed out of hand." *See id*. at 724. Since the Court failed to take that action, the Court exercises its inherent authority to rectify the injustice that occurred as a result. The settlement agreements are abrogated and the Court orders Plaintiffs' counsel to return to Akorn the attorney's fees provided by the settlement agreements. Plaintiffs' counsel should file a status report by July 8, 2019 certifying that the fees have been returned.

385 F. Supp. 3d at 622–23 (one citation omitted). The district court's reference to "inherent authority" should have been to §78u–4(c)(1) and Rule 11, but with that change the analysis holds. Still, our reference to "the current record" is important; a formal motion under Rule 60(b) is necessary, and counsel are entitled to be heard.

Because Rule 11(c)(4) gives the district judge discretion over the choice of sanction, the court would be entitled to direct counsel who should not have sued at all to surrender the money they extracted from Akorn. But selecting an appropriate remedy (if any) should await resolution of the proceedings under §78u–4(c)(1) and, derivatively, Rule 11.

The orders of the district court denying Frank's motion to intervene are vacated, and the cases are remanded with instructions to treat him as an intervenor, permit him to make a motion under Rule 60(b), and decide what relief, if any, is appropriate in light of that motion should one be made. The appeals by House and Pullos are dismissed for lack of jurisdiction because they have not explained how, if at all, the district court's orders adversely affect them, as opposed to counsel.

# EXHIBIT A

| | |
|---|---|
| Security | AKRXQ US Equity |
| Start Date | 4/21/2017 |
| End Date | 12/29/2017 |
| Period | D |
| Currency | USD |

| Date | PX_OPEN | PX_HIGH | PX_LOW | PX_OFFICIAL_CLOSE | PX_VOLUME | PE_RATIO |
|---|---|---|---|---|---|---|
| 4/21/2017 | 32.8200 | 33.0800 | 32.6600 | 32.9100 | 2,297,219 | 19.0218 |
| 4/24/2017 | 32.5500 | 34.0000 | 32.2872 | 32.7200 | 7,420,151 | 18.9119 |
| 4/25/2017 | 32.9000 | 33.2100 | 32.8500 | 33.0900 | 59,183,770 | 19.1258 |
| 4/26/2017 | 33.1600 | 33.3000 | 33.0500 | 33.1800 | 9,642,089 | 19.1778 |
| 4/27/2017 | 33.2500 | 33.4200 | 33.1700 | 33.3400 | 6,105,616 | 19.2703 |
| 4/28/2017 | 33.3300 | 33.4750 | 33.2600 | 33.4500 | 4,371,901 | 19.3339 |
| 5/1/2017 | 33.4800 | 33.4800 | 33.2300 | 33.3200 | 3,650,417 | 19.2587 |
| 5/2/2017 | 33.3200 | 33.5300 | 33.3000 | 33.4950 | 5,119,209 | 19.3599 |
| 5/3/2017 | 33.3500 | 33.3500 | 32.8600 | 33.1400 | 7,976,058 | 19.1547 |
| 5/4/2017 | 33.2200 | 33.2500 | 33.0000 | 33.1000 | 4,273,870 | 19.1316 |
| 5/5/2017 | 33.2000 | 33.2000 | 33.0600 | 33.0800 | 3,251,358 | 19.1200 |
| 5/8/2017 | 33.0900 | 33.2800 | 33.0000 | 33.0950 | 3,214,508 | 19.1287 |
| 5/9/2017 | 33.1600 | 33.3000 | 33.1000 | 33.2700 | 3,554,680 | 19.2298 |
| 5/10/2017 | 33.2600 | 33.2600 | 33.1200 | 33.2400 | 2,514,352 | 19.2125 |
| 5/11/2017 | 33.2000 | 33.2800 | 33.0200 | 33.1700 | 3,196,171 | 19.1720 |
| 5/12/2017 | 33.1500 | 33.2401 | 33.0800 | 33.1500 | 2,133,095 | 19.1605 |
| 5/15/2017 | 33.1400 | 33.2300 | 33.1000 | 33.1900 | 1,912,648 | 19.1836 |
| 5/16/2017 | 33.2300 | 33.2800 | 33.1600 | 33.2700 | 2,491,699 | 19.2298 |
| 5/17/2017 | 33.2200 | 33.2800 | 33.1400 | 33.1400 | 2,659,082 | 19.1547 |
| 5/18/2017 | 33.1600 | 33.1750 | 32.9500 | 33.1000 | 3,056,805 | 19.1316 |
| 5/19/2017 | 33.2000 | 33.2550 | 33.1200 | 33.2100 | 1,323,949 | 19.1952 |
| 5/22/2017 | 33.1700 | 33.2600 | 33.0700 | 33.2000 | 1,959,087 | 19.1894 |
| 5/23/2017 | 33.1700 | 33.2500 | 33.1500 | 33.1800 | 2,876,317 | 19.1778 |
| 5/24/2017 | 33.1600 | 33.2300 | 33.1200 | 33.1800 | 2,549,496 | 19.1778 |
| 5/25/2017 | 33.1900 | 33.2600 | 33.1800 | 33.2400 | 1,242,300 | 19.2125 |
| 5/26/2017 | 33.2000 | 33.2650 | 33.1700 | 33.2100 | 1,091,188 | 19.1952 |
| 5/30/2017 | 33.2200 | 33.2600 | 33.1700 | 33.2000 | 1,602,043 | 19.1894 |

| Date | PX_OPEN | PX_HIGH | PX_LOW | PX_OFFICIAL_CLOSE | PX_VOLUME | PE_RATIO |
|---|---|---|---|---|---|---|
| 5/31/2017 | 33.2300 | 33.3300 | 33.1800 | 33.2700 | 2,762,381 | 19.2298 |
| 6/1/2017 | 33.2300 | 33.3150 | 33.2100 | 33.3000 | 2,400,993 | 19.2472 |
| 6/2/2017 | 33.2800 | 33.3500 | 33.2500 | 33.2600 | 1,073,597 | 19.2241 |
| 6/5/2017 | 33.2700 | 33.3200 | 33.1400 | 33.2000 | 3,747,039 | 19.1894 |
| 6/6/2017 | 33.2300 | 33.3000 | 33.2000 | 33.2300 | 812,013 | 19.2067 |
| 6/7/2017 | 33.2500 | 33.9500 | 33.2400 | 33.3600 | 2,394,503 | 19.2819 |
| 6/8/2017 | 33.3700 | 33.4250 | 33.2000 | 33.2800 | 1,946,838 | 19.2356 |
| 6/9/2017 | 33.3000 | 33.4400 | 33.1250 | 33.2400 | 1,623,335 | 19.2125 |
| 6/12/2017 | 33.2500 | 33.4100 | 33.2300 | 33.3800 | 1,371,288 | 19.2934 |
| 6/13/2017 | 33.3800 | 33.4550 | 33.3200 | 33.4400 | 1,320,259 | 19.3281 |
| 6/14/2017 | 33.3800 | 33.4600 | 33.3300 | 33.4400 | 1,109,511 | 19.3281 |
| 6/15/2017 | 33.3700 | 33.4800 | 33.3200 | 33.4500 | 1,176,397 | 19.3339 |
| 6/16/2017 | 33.4600 | 33.5400 | 33.3800 | 33.4800 | 1,842,377 | 19.3512 |
| 6/19/2017 | 33.5200 | 33.5400 | 33.4000 | 33.4500 | 1,646,056 | 19.3339 |
| 6/20/2017 | Frank's Purchase 33.48 | 33.6200 | 33.3800 | 33.4100 | 1,129,667 | 19.3108 |
| 6/21/2017 | 33.4400 | 33.5900 | 33.4200 | 33.4900 | 1,634,926 | 19.3570 |
| 6/22/2017 | 33.4700 | 33.5500 | 33.4600 | 33.5300 | 2,093,818 | 19.3801 |
| 6/23/2017 | 33.5200 | 33.5700 | 33.4800 | 33.5300 | 2,472,890 | 19.3801 |
| 6/26/2017 | 33.5400 | 33.6100 | 33.4800 | 33.5800 | 1,695,159 | 19.4090 |
| 6/27/2017 | 33.5500 | 33.5900 | 33.4100 | 33.4100 | 1,109,263 | 19.3108 |
| 6/28/2017 | 33.4800 | 33.5650 | 33.4700 | 33.4900 | 1,121,500 | 19.3570 |
| 6/29/2017 | 33.4900 | 33.5300 | 33.4000 | 33.4400 | 1,998,928 | 19.3281 |
| 6/30/2017 | 33.4600 | 33.5800 | 33.4500 | 33.5400 | 1,615,781 | 26.5137 |
| 7/3/2017 | 33.5400 | 33.6000 | 33.4450 | 33.4700 | 550,271 | 26.4583 |
| 7/5/2017 | 33.4800 | 33.5700 | 33.4800 | 33.5100 | 1,299,767 | 26.4900 |
| 7/6/2017 | 33.5200 | 33.5350 | 33.4300 | 33.5000 | 1,593,462 | 26.4820 |
| 7/7/2017 | 33.5100 | 33.5900 | 33.5000 | 33.5500 | 1,223,102 | 26.5216 |
| 7/10/2017 | 33.5300 | 33.6050 | 33.4500 | 33.5650 | 968,475 | 26.5334 |
| 7/11/2017 | 33.5500 | 33.6300 | 33.5400 | 33.6000 | 1,173,813 | 26.5611 |
| 7/12/2017 | 33.6500 | 33.6700 | 33.5100 | 33.5500 | 1,394,275 | 26.5216 |
| 7/13/2017 | 33.5500 | 33.6900 | 33.5200 | 33.6300 | 1,358,833 | 26.5848 |
| 7/14/2017 | 33.6200 | 33.6750 | 33.5700 | 33.6450 | 2,798,373 | 26.5967 |
| 7/17/2017 | 33.6500 | 33.7300 | 33.5800 | 33.7000 | 1,401,266 | 26.6401 |

| Date | PX_OPEN | PX_HIGH | PX_LOW | PX_OFFICIAL_CLOSE | PX_VOLUME | PE_RATIO |
|---|---|---|---|---|---|---|
| 7/18/2017 | 33.6700 | 33.7150 | 33.6500 | 33.7000 | 2,708,224 | 26.6401 |
| 7/19/2017 | 33.7000 | 33.7100 | 33.4300 | 33.6400 | 8,626,117 | 26.5927 |
| 7/20/2017 | 33.6400 | 33.7200 | 33.6000 | 33.6500 | 6,337,456 | 26.6006 |
| 7/21/2017 | 33.6600 | 33.6800 | 33.5800 | 33.6000 | 3,516,788 | 26.5611 |
| 7/24/2017 | 33.6000 | 33.6400 | 33.5700 | 33.6200 | 1,393,669 | 26.5769 |
| 7/25/2017 | 33.6200 | 33.6550 | 33.6000 | 33.6500 | 1,430,037 | 26.6006 |
| 7/26/2017 | 33.6400 | 33.6700 | 33.6200 | 33.6300 | 900,845 | 26.5848 |
| 7/27/2017 | 33.6400 | 33.6700 | 33.5900 | 33.6000 | 1,399,581 | 26.5611 |
| 7/28/2017 | 33.6000 | 33.6650 | 33.5800 | 33.6300 | 2,585,278 | 26.5848 |
| 7/31/2017 | 33.6300 | 33.6500 | 33.5900 | 33.6200 | 1,543,830 | 26.5769 |
| 8/1/2017 | 33.5500 | 33.6150 | 33.4500 | 33.4500 | 4,905,970 | 26.4425 |
| 8/2/2017 | 33.4200 | 33.5500 | 33.4200 | 33.4800 | 4,245,090 | 26.4662 |
| 8/3/2017 | 33.4800 | 33.5400 | 33.3975 | 33.4500 | 2,939,444 | 26.4425 |
| 8/4/2017 | 33.4500 | 33.5400 | 33.3200 | 33.4700 | 2,520,661 | 26.4583 |
| 8/7/2017 | 33.4300 | 33.5400 | 33.4000 | 33.4700 | 1,748,451 | 26.4583 |
| 8/8/2017 | 33.4600 | 33.4800 | 33.3500 | 33.4000 | 1,974,602 | 26.4030 |
| 8/9/2017 | 33.4000 | 33.5000 | 33.3100 | 33.3600 | 5,555,614 | 26.3714 |
| 8/10/2017 | 33.3700 | 33.4200 | 33.2990 | 33.3200 | 5,344,721 | 26.3398 |
| 8/11/2017 | 33.3500 | 33.4000 | 33.3000 | 33.3100 | 1,781,794 | 26.3318 |
| 8/14/2017 | 33.3200 | 33.3800 | 33.3100 | 33.3350 | 2,152,209 | 26.3516 |
| 8/15/2017 | 33.3400 | 33.3600 | 33.3300 | 33.3400 | 922,350 | 26.3556 |
| 8/16/2017 | 33.3300 | 33.3600 | 33.1800 | 33.3000 | 1,500,196 | 26.3239 |
| 8/17/2017 | 33.3000 | 33.3750 | 32.5100 | 32.6000 | 7,720,556 | 25.7706 |
| 8/18/2017 | 32.4200 | 32.5000 | 31.8200 | 31.9800 | 8,063,576 | 25.2805 |
| 8/21/2017 | 32.0900 | 32.7500 | 31.9600 | 32.6100 | 5,151,797 | 25.7785 |
| 8/22/2017 | 32.4000 | 32.7000 | 32.2900 | 32.5200 | 4,023,260 | 25.7073 |
| 8/23/2017 | 32.5500 | 32.5800 | 32.3000 | 32.3200 | 2,025,177 | 25.5492 |
| 8/24/2017 | 32.3300 | 32.4700 | 32.3100 | 32.3600 | 3,008,340 | 25.5809 |
| 8/25/2017 | 32.4000 | 32.6900 | 32.4000 | 32.5000 | 1,287,079 | 25.6915 |
| 8/28/2017 | 32.4500 | 32.5900 | 32.4200 | 32.4900 | 2,386,984 | 25.6836 |
| 8/29/2017 | 32.5300 | 32.7200 | 32.3500 | 32.6200 | 1,101,094 | 25.7864 |
| 8/30/2017 | 32.5700 | 32.8600 | 32.5400 | 32.8300 | 3,185,235 | 25.9524 |
| 8/31/2017 | 32.8400 | 33.0000 | 32.7700 | 32.9000 | 1,491,958 | 26.0077 |

| Date | PX_OPEN | PX_HIGH | PX_LOW | PX_OFFICIAL_CLOSE | PX_VOLUME | PE_RATIO |
|---|---|---|---|---|---|---|
| 9/1/2017 | 32.9200 | 32.9700 | 32.8650 | 32.9400 | 1,335,401 | 26.0394 |
| 9/5/2017 | 32.9200 | 33.0300 | 32.8500 | 32.9700 | 1,743,950 | 26.0631 |
| 9/6/2017 | 32.9900 | 33.0300 | 32.9200 | 32.9600 | 1,502,854 | 26.0552 |
| 9/7/2017 | 32.9900 | 33.1010 | 32.9500 | 32.9900 | 2,456,018 | 26.0789 |
| 9/8/2017 | 32.9600 | 33.1400 | 32.9590 | 33.1100 | 1,522,501 | 26.1737 |
| 9/11/2017 | 33.1700 | 33.2200 | 33.1090 | 33.1700 | 1,311,719 | 26.2212 |
| 9/12/2017 | 33.1800 | 33.4600 | 33.1300 | 33.2300 | 2,194,629 | 26.2686 |
| 9/13/2017 | 33.2500 | 33.3000 | 33.0601 | 33.1500 | 1,582,815 | 26.2054 |
| 9/14/2017 | 33.1500 | 33.2325 | 32.7300 | 32.9700 | 2,936,295 | 26.0631 |
| 9/15/2017 | 33.0000 | 33.1300 | 32.9700 | 33.1000 | 1,889,374 | 26.1658 |
| 9/18/2017 | 33.0600 | 33.1200 | 33.0000 | 33.0200 | 1,359,384 | 26.1026 |
| 9/19/2017 | 33.0700 | 33.1300 | 33.0500 | 33.1000 | 736,378 | 26.1658 |
| 9/20/2017 | 33.1000 | 33.2100 | 33.0850 | 33.1500 | 943,627 | 26.2054 |
| 9/21/2017 | 33.1000 | 33.1575 | 33.1000 | 33.1400 | 1,341,753 | 26.1975 |
| 9/22/2017 | 33.1400 | 33.1550 | 33.0350 | 33.0600 | 1,439,347 | 26.1342 |
| 9/25/2017 | 33.0500 | 33.1100 | 33.0200 | 33.1100 | 977,746 | 26.1737 |
| 9/26/2017 | 33.1000 | 33.1550 | 33.0500 | 33.1200 | 1,630,045 | 26.1817 |
| 9/27/2017 | 33.1400 | 33.1550 | 33.0800 | 33.1500 | 1,166,243 | 26.2054 |
| 9/28/2017 | 33.1400 | 33.1800 | 33.1000 | 33.1700 | 2,311,644 | 26.2212 |
| 9/29/2017 | 33.1500 | 33.3000 | 33.1350 | 33.1900 | 2,059,911 | 37.0862 |
| 10/2/2017 | 33.2100 | 33.2100 | 33.1500 | 33.1700 | 2,823,694 | 37.0639 |
| 10/3/2017 | 33.0300 | 33.0600 | 32.6000 | 32.6800 | 6,719,083 | 36.5163 |
| 10/4/2017 | 32.8000 | 33.0900 | 32.8000 | 32.9000 | 4,777,666 | 36.7622 |
| 10/5/2017 | 32.9000 | 33.0000 | 32.7000 | 32.7900 | 3,239,908 | 36.6392 |
| 10/6/2017 | 32.7800 | 33.0000 | 32.6700 | 32.8300 | 2,778,460 | 36.6839 |
| 10/9/2017 | 32.8100 | 32.9100 | 32.7950 | 32.8600 | 1,437,385 | 36.7175 |
| 10/10/2017 | 32.9000 | 33.0000 | 32.9000 | 32.9350 | 2,278,145 | 36.8013 |
| 10/11/2017 | 32.9900 | 33.0000 | 32.8600 | 32.9500 | 623,216 | 36.8180 |
| 10/12/2017 | 32.9900 | 33.2000 | 32.9700 | 33.1600 | 2,846,383 | 37.0527 |
| 10/13/2017 | 33.1500 | 33.2300 | 33.1300 | 33.2200 | 1,553,972 | 37.1197 |
| 10/16/2017 | 33.2600 | 33.3500 | 33.1800 | 33.2100 | 1,566,755 | 37.1086 |
| 10/17/2017 | 33.2200 | 33.2900 | 33.1800 | 33.2500 | 1,348,573 | 37.1532 |
| 10/18/2017 | 33.2300 | 33.3200 | 33.1500 | 33.1800 | 2,295,661 | 37.0750 |

| Date | PX_OPEN | PX_HIGH | PX_LOW | PX_OFFICIAL_CLOSE | PX_VOLUME | PE_RATIO |
|---|---|---|---|---|---|---|
| 10/19/2017 | 33.1600 | 33.1700 | 33.1000 | 33.1500 | 1,672,543 | 37.0415 |
| 10/20/2017 | 33.2200 | 33.3700 | 33.1525 | 33.2800 | 1,311,566 | 37.1868 |
| 10/23/2017 | 33.2200 | 33.3200 | 33.1900 | 33.2900 | 1,012,724 | 37.1979 |
| 10/24/2017 | 33.2900 | 33.3000 | 33.2300 | 33.2600 | 430,144 | 37.1644 |
| 10/25/2017 | 33.2300 | 33.2700 | 33.1450 | 33.2200 | 1,720,566 | 37.1197 |
| 10/26/2017 | 33.2000 | 33.2800 | 32.1700 | 32.8400 | 12,333,905 | 36.6951 |
| 10/27/2017 | 32.9000 | 32.9800 | 32.5000 | 32.5200 | 2,730,959 | 36.3376 |
| 10/30/2017 | 32.4900 | 32.6500 | 32.3300 | 32.4400 | 2,136,133 | 36.2482 |
| 10/31/2017 | 32.4900 | 32.6900 | 32.3600 | 32.5700 | 3,867,479 | 36.3934 |
| 11/1/2017 | 32.6400 | 32.7400 | 32.4500 | 32.5400 | 3,414,159 | 36.3599 |
| 11/2/2017 | 33.1650 | 33.4100 | 33.1500 | 33.2500 | 9,313,017 | 37.1532 |
| 11/3/2017 | 33.2000 | 33.2650 | 33.0900 | 33.1500 | 1,693,317 | 37.0415 |
| 11/6/2017 | 33.1600 | 33.3050 | 33.1300 | 33.2600 | 1,505,929 | 37.1644 |
| 11/7/2017 | 33.2500 | 33.3600 | 33.2200 | 33.2700 | 2,087,265 | 37.1756 |
| 11/8/2017 | 33.2900 | 33.3300 | 33.2050 | 33.2400 | 1,459,423 | 37.1421 |
| 11/9/2017 | 33.2400 | 33.2800 | 33.1350 | 33.1500 | 2,406,843 | 37.0415 |
| 11/10/2017 | 33.1700 | 33.3200 | 33.1700 | 33.2100 | 2,907,397 | 37.1086 |
| 11/13/2017 | 33.2500 | 33.3200 | 33.1800 | 33.3100 | 1,227,115 | 37.2203 |
| 11/14/2017 | 33.2700 | 33.4200 | 33.2600 | 33.3700 | 980,819 | 37.2873 |
| 11/15/2017 | 33.3300 | 33.5500 | 33.2600 | 33.4400 | 1,158,806 | 37.3655 |
| 11/16/2017 | 33.4900 | 33.5300 | 33.3500 | 33.4800 | 1,330,594 | 37.4102 |
| 11/17/2017 | 33.3500 | 33.4700 | 33.3200 | 33.4000 | 1,150,101 | 37.3209 |
| 11/20/2017 | 33.4500 | 33.4750 | 33.1500 | 33.4000 | 1,090,432 | 37.3209 |
| 11/21/2017 | 33.3500 | 33.4500 | 31.7700 | 32.3000 | 10,920,825 | 36.0917 |
| 11/22/2017 | 32.9500 | 33.0100 | 32.3000 | 32.3700 | 3,091,750 | 36.1699 |
| 11/24/2017 | 32.3700 | 32.7500 | 32.3700 | 32.6100 | 519,761 | 36.4381 |
| 11/27/2017 | 32.6100 | 32.6900 | 32.5500 | 32.6400 | 700,546 | 36.4716 |
| 11/28/2017 | 32.6300 | 32.7300 | 32.2800 | 32.4500 | 877,042 | 36.2593 |
| 11/29/2017 | 32.4400 | 32.7300 | 32.4300 | 32.5300 | 611,628 | 36.3487 |
| 11/30/2017 | 32.6400 | 32.7400 | 32.5200 | 32.5500 | 674,825 | 36.3711 |
| 12/1/2017 | 32.5500 | 33.0300 | 32.3500 | 32.9000 | 1,531,913 | 36.7622 |
| 12/4/2017 | 32.9500 | 33.0600 | 32.7100 | 32.7600 | 871,106 | 36.6057 |
| 12/5/2017 | 32.7300 | 32.9300 | 32.6600 | 32.8000 | 536,593 | 36.6504 |

| Date | PX_OPEN | PX_HIGH | PX_LOW | PX_OFFICIAL_CLOSE | PX_VOLUME | PE_RATIO |
|---|---|---|---|---|---|---|
| 12/6/2017 | 32.8100 | 33.0500 | 32.6700 | 32.6900 | 1,168,177 | 36.5275 |
| 12/7/2017 | 32.7000 | 32.7600 | 32.3600 | 32.4900 | 1,325,474 | 36.3040 |
| 12/8/2017 | 32.5200 | 32.9700 | 32.4600 | 32.9200 | 1,579,876 | 36.7845 |
| 12/11/2017 | 32.9400 | 32.9400 | 32.5420 | 32.6400 | 1,061,256 | 36.4716 |
| 12/12/2017 | 32.6600 | 32.6600 | 32.0900 | 32.2000 | 2,544,773 | 35.9800 |
| 12/13/2017 | 32.3100 | 32.5700 | 31.8100 | 32.2200 | 2,135,629 | 36.0023 |
| 12/14/2017 | 32.1400 | 32.2700 | 31.9700 | 32.2000 | 1,226,188 | 35.9800 |
| 12/15/2017 | 32.0700 | 32.4100 | 32.0700 | 32.3600 | 1,702,791 | 36.1588 |
| 12/18/2017 | 32.3700 | 32.6700 | 32.2200 | 32.3150 | 631,915 | 36.1085 |
| 12/19/2017 | 32.2800 | 32.6200 | 32.2700 | 32.3700 | 711,294 | 36.1699 |
| 12/20/2017 | 32.3700 | 32.4550 | 32.2900 | 32.3600 | 496,273 | 36.1588 |
| 12/21/2017 | 32.3200 | 32.4000 | 31.9900 | 32.0400 | 2,003,813 | 35.8012 |
| 12/22/2017 | 32.1100 | 32.3300 | 32.0050 | 32.0800 | 1,456,376 | 35.8459 |
| 12/26/2017 | 32.0800 | 32.2100 | 31.7700 | 31.9500 | 1,605,227 | 35.7006 |
| 12/27/2017 | 31.9600 | 32.0800 | 31.8000 | 31.8500 | 1,734,073 | 35.5889 |
| 12/28/2017 | 31.9500 | 32.0350 | 31.7500 | 31.8400 | 2,163,265 | 35.5777 |
| 12/29/2017 | 31.8400 | 32.4100 | 31.8200 | 32.2300 | 2,212,899 | 59.9550 |