Nos. 18-3307 and 19-2408

# In the United States Court of Appeals for the Seventh Circuit

SHAUN A. HOUSE, Individually and on behalf of all others similarly situated,
*Plaintiff-Appellee*,

v.

AKORN, INC., ET AL.,
*Defendants-Appellees*.

------------------------------------------

APPEAL OF: THEODORE H. FRANK,
*Intervenor*.

SHAUN A. HOUSE, Individually and on behalf of all others similarly situated,
*Plaintiff-Appellant*,

v.

AKORN, INC., ET AL.,
*Defendants-Appellees*.

On Appeals from the United States District Court for the Northern District of Illinois in No. 1:17-cv-05018,
Hon. Thomas M. Durkin, District Judge

## PETITION FOR PANEL REHEARING AND REHEARING *EN BANC* BY PLAINTIFF SHAUN HOUSE AND HIS COUNSEL MONTEVERDE & ASSOCIATES PC


Juan E. Monteverde
MONTEVERDE & ASSOCIATES PC
The Empire State Building
350 Fifth Avenue, Suite 4740
New York, NY 10118
Tel.: (212) 971-1341
jmonteverde@monteverdelaw.com

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 18-3307, 19-2408

Short Caption: House v. Akorn, Inc. et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Shaun A. House

Monteverde & Associates PC (new)

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Monteverde & Associates PC, Kahn Swick & Foti, LLC, Geyser P.C., Levi & Korsinsky, Blau & Malmfeldt,

Lubin Austermuehle, P.C.

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Juan E. Monteverde Date: 4/29/2024

Attorney's Printed Name: Juan E. Monteverde

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☑ No ☐

Address: The Empire State Building, 350 5th Ave, Suite 4740, New York, NY 10118

Phone Number: (212) 971-1341 Fax Number: (212) 202-7880

E-Mail Address: jmonteverde@monteverdelaw.com

rev. 12/19 AK

TABLE OF CONTENTS

STATEMENT OF THE CASE .......... 1

ARGUMENT .......... 8

I. The Opinion conflicts with authority from this Court and other courts of appeals holding that a litigant may not intervene to interject new claims or controversies in a dismissed action. .......... 8

II. The Opinion conflicts with the Tenth Circuit's holding that "a voluntary dismissal without prejudice under Rule 41(a) divests the district court of subject-matter jurisdiction to consider a Rule 60(b) motion to reopen." .......... 13

III. The Opinion incorrectly resolves a question of exceptional importance and conflicts with existing authority by holding that district courts *must* conduct the sanctions review set forth in the PSLRA even when actions have been voluntarily dismissed without prejudice under Rule 41 .......... 16

IV. The Opinion conflicts with Fed. R. App. 3(c)(7) and this Court's precedent that holds naming the party below rather than their attorney as the appellant is *not* a jurisdictional defect when the attorney's intent to appeal is clear .......... 18

CONCLUSION .......... 19

APPENDIX WITH PANEL OPINION .......... 22

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Ajiwoju v. Cottrell*,
245 F. App'x 563 (8th Cir. 2007) ....................................................... 14

*Bensinger v. Denbury Res., Inc.*,
No. 10-CV-1917,
2012 U.S. Dist. LEXIS 140801 (E.D.N.Y. Sept. 28, 2012) .................. 2

*Berg v. Akorn, Inc.*,
No. 17 C 5016,
2017 U.S. Dist. LEXIS 192278 (N.D. Ill. Nov. 21, 2017) ............. 3, 13

*Blaser v. Bessemer Tr. Co.*,
No. 01 CIV. 11599 (DLC),
2002 U.S. Dist. LEXIS 19856 (S.D.N.Y. Oct. 21, 2002) .................. 4, 6

*Crawford v. Equifax Payment Servs.*,
201 F.3d 877 (7th Cir. 2000) ....................................................... 10, 11

*Devlin v. Scardelletti*,
536 U.S. 1 (2002) ............................................................................ 11

*Energy Transp. Grp., Inc. v. Mar. Admin.*,
956 F.2d 1206 (D.C. Cir. 1992) ........................................................... 9

*Foreman v. Wadsworth*,
844 F.3d 620 (7th Cir. 2016) ......................................................... 7, 19

*In re Genzyme Corp. S'holder Litig.*,
No. 10-cv-11356,
2011 U.S. Dist. LEXIS 113351 (D. Mass. Sept. 13, 2011) .................. 4

*Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*,
No. C-13-1734 EMC,
2014 U.S. Dist. LEXIS 94658 (N.D. Cal. July 10, 2014) .................... 4

*Griffith v. Univ. Hosp., L.L.C.*,
249 F.3d 658 (7th Cir. 2001) ............................................................. 12

*Hofheimer v. McIntee*,
179 F.2d 789 (7th Cir. 1950) ........................................................... 2, 8

*House v. Akorn, Inc.*,
385 F. Supp. 3d 616 (N.D. Ill. 2019) .................................................. 6

*House v. Akorn, Inc.*,
No. 17 C 5026,
2018 U.S. Dist. LEXIS 163924 (N.D. Ill. Sept. 25, 2018) ................... 3

*Jenkins v. Vill. of Maywood*,
506 F.3d 622 (7th Cir. 2007) ............................................................ 17

*In re Johnson & Johnson Derivative Litig.*,
900 F. Supp. 2d 467 (D.N.J. 2012) .................................................... 11

*Jou v. Kimberly-Clark Corp.*,
No. 13-cv-03075-JSC,
2015 U.S. Dist. LEXIS 97817 (N.D. Cal. July 27, 2015) .................... 9

*Kunz v. N.Y. State Comm'n on Judicial Misconduct*,
155 F. App'x 21 (2d Cir. 2005) ............................................................ 9

*Ligas v. Maram*,
478 F.3d 771 (7th Cir. 2007) .............................................................. 3

*Lusardi v. Xerox Corp.*,
975 F.2d 964 (3d Cir. 1992) ................................................................. 8

*Manchester Mgmt. Co. v. Echo Therapeutics, Inc.*,
297 F. Supp. 3d 451 (S.D.N.Y. 2018) .................................................. 4

*Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*,
2 F.3d 544 (4th Cir. 1993) .................................................................. 9

*Morlan v. Universal Guar. Life Ins. Co.*,
298 F.3d 609 (7th Cir. 2002) ............................................................ 10

*Nelson v. Napolitano*,
657 F.3d 586 (7th Cir. 2011) ........................................................ 14, 15

*Robert F. Booth Tr. v. Crowley*,
687 F.3d 314 (7th Cir. 2012) ........................................................ 10, 11

*Tosco Corp. v. Hodel*,
804 F.2d 590 (10th Cir. 1986) ............................................................ 9

*Unite Here v. Cintas Corp.*,
500 F. Supp. 2d 332 (S.D.N.Y. 2007) ................................................ 4

*United States v. Ford*,
650 F.2d 1141 (9th Cir. 1981) ........................................................ 8-9

*Waetzig v. Halliburton Energy Servs.*,
82 F.4th 918 (10th Cir. 2023) ................................................ 3, 14, 15

*Yesh Music v. Lakewood Church*,
727 F.3d 356 (5th Cir. 2013) .......................................................... 15

**STATUTES**

15 U.S.C. § 78u-4(c) ........................................................... 4, 5, 16, 17

**RULES**

Fed. R. App. P. 3(c)(7) ...................................................... 6, 7, 18, 19

Fed. R. Civ. P. 11 ........................................................................... 5

Fed. R. Civ. P. 24 ............................................................... 1, 3, 12

Fed. R. Civ. P. 41 ............................................................... *passim*

Fed. R. Civ. P. 60(b) ............................................... 2, 3, 13, 14, 15

**OTHER AUTHORITIES**

James Wm. Moore et al., *Moore's Federal Practice* § 41.34[4][b], at 41-116 (3d ed. 2013) ...................................................................9-10

Plaintiff in one of the six dismissed actions at issue, Shaun House, and his counsel Monteverde & Associates PC,[1] petition for panel rehearing and rehearing *en banc*.

**<u>STATEMENT OF THE CASE</u>**

Seven years after the underlying actions were dismissed without prejudice via Fed. R. Civ. P. 41(a)(1)(A) and four years after appellate argument, a two-judge panel of this Court rendered an opinion in these consolidated appeals ("Opinion") that creates or further cements multiple circuit splits and disregards existing Seventh Circuit precedent on important issues. The Opinion also overlooks or misapprehends critical points of law and fact.

With respect to an appeal brought by appellant/amicus curiae Theodore Frank from an order denying his motion to intervene, the Opinion holds that Mr. Frank *must* be allowed to permissively intervene under Fed. R. Civ. P. 24(b)(1)(B) in *uncertified putative class actions that were already dismissed in 2017 via self-effectuating Rule 41(a)(1)(A)*

---

[1] Monteverde & Associates PC has been recognized by Institutional Shareholder Services (ISS) as amongst the top 50 plaintiff securities law firms based on the total amount of cash recovered for shareholders every year from 2018-2022.

*stipulations*, and that, upon intervention, he must be allowed to file a motion under Fed. R. Civ. P. 60(b) for some unspecified form of "relief" from a *non-existent* "judgment." Opinion at 9, 13. Mr. Frank could not even have been a member of any actual certified class if the actions had proceeded to certification, a fact that plaintiffs raised but the panel overlooked. *Brief for Plaintiff-Appellee Shaun A. House in Case No. 18-3307*, Doc. 46 ("House Brief"), at 3, 14, 32, 36.[2]

The procedure on remand mandated by the Opinion is contrary to: (i) a mountain of precedent holding that "intervention is ancillary and subordinate to the main cause and whenever a suit ceases to exist by virtue of dismissal…there remains no longer any action in which there can be intervention[,]" *Hofheimer v. McIntee*, 179 F.2d 789, 792 (7th Cir. 1950),[3] *infra*; and (ii) the significant discretion afforded to district courts to deny permissive intervention in *uncertified* actions, even where they

---

[2] This is because Mr. Frank purchased his Akorn shares after the record date used to determine eligibility for voting on the pertinent merger, and he thus lacked standing to assert a claim under Section 14(a) of the Securities Exchange Act of 1934. *E.g.*, *Bensinger v. Denbury Res., Inc.*, No. 10-CV-1917,2012 U.S. Dist. LEXIS 140801, at *12-13 (E.D.N.Y. Sept. 28, 2012) (collecting cases).

[3] Unless noted otherwise, all internal citations and quotation marks have been omitted.

do "not explicitly break out [their] reasoning" between Rule 24(a) and Rule 24(b). *Ligas v. Maram*, 478 F.3d 771, 776 (7th Cir. 2007).[4] The Opinion also cements a split with the Tenth Circuit, which has held that "a voluntary dismissal without prejudice under Rule 41(a) divests the district court of subject-matter jurisdiction to consider a Rule 60(b) motion to reopen." *Waetzig v. Halliburton Energy Servs.*, 82 F.4th 918, 920 (10th Cir. 2023).

Furthermore, to counsel's knowledge, the Opinion is also the *only* to hold that the Private Securities Litigation Reform Act ("PSLRA")

---

[4] The panel also incorrectly faulted the district court for *purportedly* failing to consider whether the wholly distinct claims Frank sought to assert against the plaintiffs' lawyers share "with the main action a common question of law or fact." Opinion at 9. But, as the district court wrote when it denied Mr. Frank's motion for permissive intervention the first time, while intervention may have been warranted if Frank's claims actually "share[d] a claim or defense[,] [t]he subject of the action here was the information in the proxy statement, not the settlement Frank argues is harmful to Akorn and by extension his ownership stake of Akorn." *Berg v. Akorn*, Inc., No. 17 C 5016, 2017 U.S. Dist. LEXIS 192278, at *11 (N.D. Ill. Nov. 21, 2017). And, after Mr. Frank moved for reconsideration, the district court further elaborated on how Mr. Frank's "claim" was that the plaintiffs' lawyers purportedly breached fiduciary duties they purportedly owed him, not about deficiencies in the proxy statement. *House v. Akorn, Inc.*, No. 17 C 5018, 2018 U.S. Dist. LEXIS 163924, at *6-8 (N.D. Ill. Sept. 25, 2018). In other words, the panel faulted the district court for correctly exercising its broad discretion to deny Frank intervention because it found Rule 24(b)(1)(B) was not satisfied.

*requires* district courts to conduct the sanctions review set forth in 15 U.S.C. § 78u-4(c) even when the action was voluntarily dismissed without prejudice under Rule 41 and there was thus *no* "final adjudication of the action[.]" *Id. See* Opinion at 11.

The Opinion holds that such dismissals *are* "a 'final adjudication of the action,'" *id.*, a plainly incorrect assertion—as noted by the numerous courts that have reached the opposite conclusion based on the statute's plain text. *E.g.*, *Manchester Mgmt. Co., LLC v. Echo Therapeutics, Inc.*, 297 F. Supp. 3d 451, 465-67 (S.D.N.Y. 2018) (in cases where there has been a voluntary dismissal under Rule 41, "[b]y the plain meaning of the term, there has been no 'adjudication' in this case, let alone adjudication that is 'final.'") (quoting *Blaser v. Bessemer Tr. Co., N.A.*, 2002 U.S. Dist. LEXIS 19856, at *9-10 (S.D.N.Y. Oct. 21, 2002) and collecting cases); *Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*, No. C-13-1734 EMC, 2014 U.S. Dist. LEXIS 94658, at *15-18 (N.D. Cal. July 10, 2014) (same, collecting cases); *In re Genzyme Corp. S'holder Litig.*, 2011 U.S. Dist. LEXIS 113351, at *21-23 (D. Mass. Sept. 13, 2011); *Unite Here v. Cintas Corp.*, 500 F. Supp. 2d 332, 337 (S.D.N.Y. 2007).

The Opinion does not address this body of law, and the issue was only tangentially addressed by the parties because the District Court's order did not invoke the PSLRA as the source of authority for its actions. However, Mr. Frank conceded that "15 U.S.C. § 78u-4(c) only requires courts to exercise their authority to apply Rule 11 after a final adjudication" and argued that district courts thus need to resort to their inherent authority if they wish to issue sanctions in this context. *Brief of Amicus Curiae Theodore H. Frank in Case No. 19-2408*, Doc. 33 ("Frank Amicus Brief"), at 13. And plaintiffs also noted that the statute only mandates a sanctions review where an action has reached a "final adjudication", "not a voluntary dismissal[.]" *Joint Consolidated Opening Brief for Plaintiffs-Appellants in Case No. 19-2408*, Doc. 26 ("Plaintiffs' Opening Brief"), at 30.

In reaching the contrary and incorrect conclusion without citation to any authority (or dictionary), Opinion at 11, the panel disregarded the statute's plain text and split from the existing body of precedent on the issue. If the Opinion is left standing, it will make this Circuit the only one where district courts *must* conduct sanctions reviews of all cases under the Securities Exchange Act of 1934 that are voluntarily dismissed

without prejudice. Congress plainly did not "intend[] to saddle district courts with this task[.]" *Blaser*, 2002 U.S. Dist. LEXIS 19856, at *9.

The Opinion also conflicts with Fed. R. App. P. 3(c)(7) and this Court's prior precedent with respect to the appeals that challenged the District Court's unprecedented invocation of its inherent authority—after the actions were dismissed via Rule 41 stipulations—to order the plaintiffs' attorneys to return fees that defendants contractually agreed to pay to resolve a fee dispute. *See House v. Akorn, Inc.*, 385 F. Supp. 3d 616 (N.D. Ill. 2019).

The Opinion states that two of the plaintiffs' law firms did not accept the District Court's disgorgement order "*and have appealed*," while noting that the appeals were "[t]echnically" brought in the names of the plaintiffs rather than the nonparty law firms. Opinion at 5. Yet, instead of addressing the appeals on their merits, the panel *dismissed them* for purported lack of jurisdiction because they were not pursued in the law firms' names. *Id.* at 13. The panel's decision to dismiss the appeals for lack of jurisdiction—without ever flagging the purported jurisdictional defect or asking for supplemental briefing—was wholly inconsistent with: (i) Fed. R. App. P. 3(c)(7) ("An appeal must not be

dismissed for… failure to name a party whose intent to appeal is otherwise clear from the notice"); and (ii) this Court's opinion in *Foreman v. Wadsworth*, 844 F.3d 620 (7th Cir. 2016).

Relying on Fed. R. App. P. 3(c)(7), *Foreman* holds that an attorney's failure to name himself as a party in the notice of appeal is *not* a jurisdictional defect when the appeal is from orders that "the only party with an interest in" is clearly the attorney. 844 F.3d at 625-26. Plaintiff's counsel never had the opportunity to bring this law to the panel's attention because the panel never raised the jurisdictional defect it *incorrectly* found existed.

At bottom, to reach its chosen outcome, the panel overlooked or misapprehended critical points of law and fact and rendered holdings that are contrary to authority from both this Court and other courts of appeals on multiple significant issues, several of which were not raised or briefed by the parties. The legally improper roadmap on remand that the panel instructed the District Court and Mr. Frank to follow warrants rehearing.

## ARGUMENT

**I. The Opinion conflicts with authority from this Court and other courts of appeals holding that a litigant may not intervene to interject new claims or controversies in a dismissed action.**

First, in holding that Frank may intervene to seek unspecified relief in *uncertified* putative class actions that were *already dismissed without prejudice under Rule 41*, the panel disregarded a mountain of precedent—including from this Court—holding that after dismissal, there is no longer any action in which to intervene and inject new claims, and thus an appeal from an order denying intervention is moot. *Brief for Plaintiff-Appellee Shaun A. House in Case No. 18-3307*, Doc. 46, at 15-19 (citing *Hofheimer*, 179 F.2d at 792 ("[I]ntervention is ancillary and subordinate to the main cause and whenever a suit ceases to exist by virtue of dismissal…there remains no longer any action in which there can be intervention."); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 984 (3d Cir. 1992) ("Injection of absent 'class' members with live individual claims into an otherwise dead case could not correct the underlying Article III problem. Because intervention is ancillary to the main cause of action, intervention will not be permitted to breathe life into a 'nonexistent' law suit."); *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981) ("Since

there is no proceeding in which appellants can intervene, this appeal is moot."); *Energy Transp. Grp., Inc. v. Mar. Admin.*, 956 F.2d 1206, 1210 (D.C. Cir. 1992) ("We first dismiss as moot the appeals from the district court orders denying intervention. The complaints in the underlying litigation were dismissed by agreement of the parties pursuant to the settlement, so there is no longer any action in which to intervene.") (citing *Tosco Corp. v. Hodel*, 804 F.2d 590, 592 (10th Cir. 1986)); *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 547-48 (4th Cir. 1993) (finding "no discretion" to permit intervention in a "defunct action"); *Kunz v. N.Y. State Comm'n on Judicial Misconduct*, 155 F. App'x 21, 22 (2d Cir. 2005) ("where the action in which a litigant seeks to intervene has been discontinued, the motion to intervene is rendered moot"); *Jou v. Kimberly-Clark Corp.*, No. 13-cv-03075-JSC, 2015 U.S. Dist. LEXIS 97817, at *7-8 (N.D. Cal. July 27, 2015) ("Given the jurisdictional effect of a Rule 41(a)(1)(A)(ii) dismissal, federal courts routinely deny motions to intervene in cases that have already been automatically terminated pursuant to Rule 41(a)(1) dismissals.") (collecting cases); James Wm. Moore et al., *Moore's Federal Practice* § 41.34[4][b], at 41-116 (3d ed.

2013) ("A stipulation filed during the pendency of a motion to intervene is effective to dismiss the action[.]")).

The Opinion completely ignores this mountain of precedent, instead citing *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000) and *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318-19 (7th Cir. 2012) for the proposition that this Court has "told judges to grant intervention freely when a class member contends that the representatives (or, more realistically, their lawyers) are misbehaving." Opinion at 8. But the panel's use of "class member" is a misnomer—there was no certified class here, and thus no "class member[s]." As this Court previously held, "until certification, the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification, because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002).

The lack of a certified class action here renders *Crawford* plainly inapposite. *See Crawford*, 201 F.3d at 879 (explaining actions at issue

were certified). *Crowley* also did not involve intervention in an uncertified putative class action—it was a derivative action where Mr. Frank was allowed to intervene to preserve standing to oppose and appeal approval of a *derivative settlement*. 687 F.3d at 318; *see also In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 476 (D.N.J. 2012) ("*Crowley* makes clear, however, that the basis of the court's ruling was that, under Seventh Circuit law, the only way [an objecting shareholder] can get appellate review is to become a party.").

Moreover, *Crawford's* holding that class members must be allowed to intervene freely was premised on the fact that—at the time—"only parties [could] appeal[.]" 201 F.3d at 881. The Supreme Court changed that two years later in *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002), rendering *Crawford's* rationale for permitting intervention outdated.

Furthermore, the panel's Opinion here strongly suggests if not outright holds that district courts *must* "grant intervention freely when a class member contends that the representatives" are misbehaving. Opinion at 8. But a holding that effectively *requires* district courts to allow permissive intervention is in tension with this Court's precedents holding that district courts have "considerable discretion" in deciding

motions for permissive intervention, and that reversal of such orders should be "a very rare bird indeed." *Griffith v. Univ. Hosp., L.L.C.*, 249 F.3d 658, 662 (7th Cir. 2001).

Regardless, precedent mandating that district courts grant intervention when an *actual member of a certified class* raises concerns about the *court-appointed* class representatives or counsel plainly has no application in *these* cases, which were uncertified, dismissed actions where an individual (Mr. Frank) who could not have even been a member of a certified class if the actions had reached certification sought to intervene to assert new claims against new parties.

***

Permitting shareholders who could not have been members of actual certified classes to intervene in uncertified, dismissed actions so they can object to a corporate expenditure will lead to havoc in putative class actions against corporations. And permitting litigants to inject their own unique claims or amorphous requests for "relief" in dismissed, uncertified actions via Rule 24 intervention creates a circuit split and encourages judge-shopping and evasion of the normal procedure for bringing new, distinct claims against new parties: filing a new action in

a court of competent jurisdiction that gets assigned to a judge pursuant to the court's rules. There is no sound reason for this Circuit to become an outlier on the issue.

## II. The Opinion conflicts with the Tenth Circuit's holding that "a voluntary dismissal without prejudice under Rule 41(a) divests the district court of subject-matter jurisdiction to consider a Rule 60(b) motion to reopen."

Moreover, while the panel instructed the District Court to permit Mr. Frank to file a Rule 60(b) motion on remand, Opinion at 9, 13, Frank never requested permission to seek relief under Rule 60(b), for good reason: As the District Court correctly noted, "Frank has not explained what procedural device would be available to him should he be permitted to intervene. The Court has *entered no judgment* from which Frank might seek relief under Rule 60." *Berg v. Akorn, Inc.*, No. 17 C 5016, 2017 U.S. Dist. LEXIS 192278, at *12 (N.D. Ill. Nov. 21, 2017).

The Opinion incorrectly states that there are "judgments" that can be "reopen[ed]" under Rule 60(b). Opinion at 9. But there are no such "judgments," as the District Court noted. *Berg*, 2017 U.S. Dist. LEXIS 192278, at *12. Rather, as plaintiffs explained in their briefs, before any judgments were entered, all the parties filed *self-executing* stipulations of dismissal under Rule 41(a)(1)(ii). *House Brief* at 1, 4, 15-25. And, as

the Tenth Circuit has held, "a voluntary dismissal without prejudice under Rule 41(a) divests the district court of subject-matter jurisdiction to consider a Rule 60(b) motion to reopen." *Waetzig*, 82 F.4th at 920. "Under Federal Rules of Civil Procedure 41(a) and 60(b), a court cannot set aside a voluntary dismissal without prejudice because it is not a final judgment, order, or proceeding." *Id.*; *see also Ajiwoju v. Cottrell*, 245 F. App'x 563, 565 (8th Cir. 2007) (reaching the same conclusion in an unpublished opinion).

Simply put, the panel instructed the District Court to allow Mr. Frank to pursue a procedurally improper path on remand, *and the parties did not even brief the issue*. In doing so, the panel has cemented a circuit split with the Tenth Circuit.

Although the panel's Order did not cite to it, counsel is aware that this Court in *Nelson v. Napolitano*, 657 F.3d 586 (7th Cir. 2011) "concluded, without determining whether there was a final proceeding, that 'there may be instances where a district court may grant relief under Rule 60(b)' for a voluntary dismissal without prejudice." *Waetzig*, 82 F.4th at 925 (criticizing and declining to follow *Nelson*). But, as the Tenth Circuit in *Waetzig* and Judge Jolly of the Fifth Circuit have

explained, *Nelson* rests on shaky ground because it addressed the pertinent issue "in a perfunctory manner." *Id.* As Judge Jolly elaborated, in *Nelson* this Court "disregard[ed] the text of Rule 60(b), resorting instead to conclusory statements without reasoned analysis." *Yesh Music v. Lakewood Church*, 727 F.3d 356, 367 (5th Cir. 2013) (Jolly, J., dissenting). Judge Jolly correctly elaborated:

> *Nelson* addresses jurisdiction over collateral issues following a Rule 41(a)(1) dismissal, but the court makes no mention of "final proceeding." 657 F.3d at 588-89. Because the government conceded Rule 60(b) jurisdiction, *Nelson's* conclusion was merely that the court "agree[d] that there may be instances where a district court may grant relief under Rule 60(b) to a plaintiff who has voluntarily dismissed the action." *Id.* at 589. *Nelson* thus offers no interpretation of Rule 60(b)'s jurisdictional scope, in particular given the court's apparently mistaken view that there was an appealable final judgment before it with respect to a first Rule 41(a)(1)(A)(i) voluntary dismissal without prejudice. *See id.*

*Id.* at 368.

Rehearing *en banc* is warranted so this Court can correct its error in *Nelson*, which was repeated by the panel here without even acknowledging the issue and the circuit split.

### III. The Opinion incorrectly resolves a question of exceptional importance and conflicts with existing authority by holding that district courts *must* conduct the sanctions review set forth in the PSLRA even when actions have been voluntarily dismissed without prejudice under Rule 41

15 U.S.C. § 78u-4(c)(1) only mandates a sanctions review "upon final adjudication of the action[.]" *Id*. Based on this clear text, to counsel's knowledge, every other court to address the issue has held that district courts are *not required* to conduct the sanctions review mandated by the PSLRA where an action has been voluntarily dismissed under Rule 41. *Supra* page 4. Moreover, Mr. Frank conceded that a "final adjudication" is required to trigger the PSLRA, *Frank Amicus Brief* at 13, and the District Court did not invoke the PSLRA as the source of authority for its actions. Thus, 15 U.S.C. § 78u-4(c) was only tangentially referenced by Plaintiffs. *Plaintiffs' Opening Brief*, at 30.

The panel confusingly wrote that "[t]he dismissal of each suit was a 'final adjudication of the action'; settlements were the reasons for the dismissals, but the statute applies to the judicial action, not to the reason for it." Opinion at 11. But *there was no judicial action here*—under this Court's precedents, the Rule 41 stipulations of dismissal were self-effectuating, and any subsequent action by the district court was

"superfluous." *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 624 (7th Cir. 2007).

The panel's holding here would make this Circuit the only one where district courts *must* conduct a PSLRA sanctions review upon the voluntary dismissal of actions filed under the Securities Exchange Act of 1934. As noted above, Congress plainly did not "intend[] to saddle district courts with this task[.]" *Blaser*, 2002, U.S. Dist. LEXIS 19856, at *9; *see also Manchester Mgmt. Co.*, 297 F. Supp. 3d at 466 ("What keeps Section 78u-4(c) from being a strict liability standard is the inclusion of a final adjudication requirement. However defined, that term means something other than a voluntary dismissal of a complaint without prejudice a mere twenty days after its filing[.]"). Contrary to the panel's holding here, Opinion at 11, a Rule 41 dismissal without prejudice is not a "final adjudication of the action[,]" and thus the PSLRA does not *require* district courts to engage in a sanctions review when actions are dismissed without prejudice under Rule 41. The Opinion's disregard of the statute's plain text should be corrected on rehearing.

## IV. The Opinion conflicts with Fed. R. App. 3(c)(7) and this Court's precedent that holds naming the party below rather than their attorney as the appellant is not a jurisdictional defect when the attorney's intent to appeal is clear

Separately, the panel dismissed for lack of jurisdiction the two appeals seeking reversal of the District Court's order that required plaintiffs' attorneys to return the fees they were paid. Opinion at 13. The panel noted that "two of" the lawyers did not accept the outcome at the District Court regarding its order that they disgorge attorneys' fees "and have appealed" – while noting that the appeal was "[t]echnically" brought by the plaintiffs "seeking an order that will let their lawyers divvy up the $322,500 pot." *Id.* at 5. Neither the Court nor Mr. Frank ever raised the issue of jurisdiction.

The dismissal of the appeals for lack of jurisdiction was in violation of Fed. R. App. P. 3(c)(7), which provides that "[a]*n appeal must not be dismissed* for informality of form or title of the notice of appeal, *or for failure to name a party whose intent to appeal is otherwise clear from the notice*[.]" The panel admittedly recognized the attorneys' intent to appeal the District Court's order requiring them to disgorge a fee that was paid to them. Opinion at 5. The "technical" mistake was not a basis for dismissal under *Foreman*, where this Court held that an attorney's

failure to bring the appeal in his name was "harmless" because the appeal was from sanctions orders and the attorney was thus "the only party with an interest in those orders" and "his intent to appeal [was] otherwise clear from the notice." 844 F.3d at 626.

Simply put, the panel's dismissal of the appeals from the order requiring the lawyers to disgorge the attorneys' fees paid to them was contrary to Fed. R. App. P. 3(c)(7) and this Court's existing precedent.

## CONCLUSION

For the foregoing reasons, rehearing is warranted.

Respectfully submitted,

/s/ *Juan E. Monteverde*
Juan E. Monteverde
Monteverde & Associates PC
The Empire State Building
350 Fifth Avenue, Suite 4740
New York, NY 10118
Tel.: (212) 971-1341
jmonteverdeatmonteverdelaw.com

*Counsel for Shaun A. House and Monteverde & Associates PC*

April 29, 2024

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This petition complies with the type-volume limitation of Fed. R. App. P. 40(b)(1) and Fed. R. App. P. 35(b)(2)(A) because it contains 3,898 words, as determined by the word-count function in Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *Juan E. Monteverde*
Juan E. Monteverde
Monteverde & Associates PC
The Empire State Building
350 Fifth Avenue, Suite 4740
New York, NY 10118
Tel.: (212) 971-1341
jmonteverdeatmonteverdelaw.com

April 29, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2024, I electronically filed the foregoing Petition with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Juan E. Monteverde*
Juan E. Monteverde
Monteverde & Associates PC
The Empire State Building
350 Fifth Avenue, Suite 4740
New York, NY 10118
Tel.: (212) 971-1341
jmonteverdeatmonteverdelaw.com

April 29, 2024

# APPENDIX WITH PANEL OPINION

In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 18-2220, 18-2221, 18-2225, 18-3307, 19-2401, and 19-2408

JORGE ALCAREZ, *et al*., as representatives of a class,

*Plaintiffs-Appellees*,

*v.*

AKORN, INC., *et al*.,

*Defendants-Appellees*.

Appeals of THEODORE H. FRANK, SHAUN A. HOUSE, and DEMETRIOS PULLOS

Appeals from the United States District Court for the Northern District of Illinois, Eastern Division.
Nos. 17 C 5016, 5017, 5018, 5021 & 5026 — **Thomas M. Durkin**, *Judge*.

ARGUED NOVEMBER 6, 2018, and APRIL 14, 2020 — DECIDED APRIL 15, 2024

Before EASTERBROOK and WOOD, *Circuit Judges*.*

* Circuit Judge Kanne, a member of the panel, died after the appeals were argued. They are being decided by a quorum. 28 U.S.C. §46(d).

EASTERBROOK, *Circuit Judge*. Six suits, filed under the federal securities laws, present questions about "mootness fees" in federal litigation. Akorn, Inc., asked its investors to approve a merger (valued at more than $4 billion) with Fresenius Kabi AG. Plaintiffs assert that the proxy statement (82 pages long, with 144 pages of exhibits) should have contained additional details, whose absence violated §14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78n(a). Within weeks Akorn amended its proxy statement to add some disclosures, though it insisted that none of these additions was required by law.

All six plaintiffs then moved to dismiss their suits, asserting that the additional disclosures mooted their complaints. They did not notify the proposed classes (five of the six suits had been filed as class actions) or seek judicial approval under Fed. R. Civ. P. 23(e). Different district judges entered orders of dismissal between July 17 and July 25, 2017.

Akorn's shareholders overwhelmingly approved the merger, with only 0.1% of all votes cast against. Many of the proxies had been voted before Akorn's supplemental disclosures; plaintiffs did not protest. On September 15 all six plaintiffs told the district court that any claim to attorneys' fees and costs had been resolved by a payment of $322,500, which counsel would divide. Those are the mootness fees. The proposed merger was abandoned for reasons unrelated to these suits, but that does not affect the dispute about what to do with this money.

Theodore Frank, one of Akorn's shareholders, learned through the press that Akorn had paid mootness fees and on September 18, 2017, filed a motion to intervene. He asked the court to require counsel to disgorge the money as unjust

enrichment (since they had not achieved any benefit for the investors). He also asked the court to enjoin the lawyers who represented the six plaintiffs to stop filing what Frank calls strike suits, whose only goal is to extract money for counsel. Frank contends that the suits amount to abuse of the legal process. Indeed, this court has remarked that litigation "that yields fees for class counsel and nothing for the class is no better than a racket. It must end." *In re Walgreen Co. Stockholder Litigation*, 832 F.3d 718, 724 (7th Cir. 2016) (cleaned up). But litigation of this kind has not ended since *Walgreen*.

Delaware, where most suits seeking extra disclosure had been filed, decided that they would be subject to "disfavor in the future unless the supplemental disclosures address a plainly material misrepresentation or omission". *In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884, 898 (Del. Ch. 2016). Delaware already had limited the payment of mootness fees unless the suit was meritorious. *In re Sauer-Danfoss Inc. Shareholders Litigation*, 65 A.3d 1116, 1123 (Del. Ch. 2011). The combination of *Sauer-Danfoss* with *Trulia* initially led to a decline in suits seeking more disclosure for mergers. In 2012 90% of deals worth more than $100 million were challenged in litigation. In 2013 that proportion rose to 96%. *Trulia* knocked it down to 74% in 2016. By 2017 and 2018 the proportion was back to 83%. And the location of the suits changed radically. In 2012 56% of these suits were in Delaware and 34% in federal court. By 2018 only 5% were in Delaware and 92% in federal court. These figures come from Matthew D. Cain, Jill E. Fisch, Steven Davidoff Solomon & Randall S. Thomas, *Mootness Fees*, 72 Vand. L. Rev. 1777, 1787 (2019). By filing in federal court plaintiffs avoid *Trulia*—for federal courts use their own procedures, whether the claim arises under state or federal law. See, e.g., *Shady Grove Orthopedic Associates, P.A. v. Allstate*

*Insurance Co.*, 559 U.S. 393 (2010); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996); *Mayer v. Gary Partners & Co.*, 29 F.3d 330 (7th Cir. 1994).

These six cases illustrate the federal practice. Suits are filed as class actions seeking more disclosure but not contending that any of the existing disclosures is false or materially misleading. Such a claim is problematic under federal securities law. See, e.g., *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, No. 22–1165 (U.S. Apr. 12, 2024) (nondisclosure does not violate Rule 10b–5). Counsel for the plaintiffs and counsel for the firms involved agree on additional disclosures. The suits are then dismissed and mootness fees paid. Plaintiffs do not move for class certification, and Rule 23(e), which requires judicial approval only when a certified class action is settled or dismissed, does not come into play. The class is not notified.

Because plaintiffs and defendants agree on the fees, the judge is not asked to award anything. A statute providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class", 15 U.S.C. §78u–4(a)(6) (part of the Private Securities Litigation Reform Act or PSLRA), does not apply, because the judge does not "award" fees. And if a class member finds out and objects, as Frank did, he is met with the response that the suit is moot and there is nothing to object *to*. The upshot: money moves from corporate treasuries to plaintiffs' lawyers; the investors get nothing, yet the payment diminishes (though only a little) the market price of each share. That's why *Walgreen* called this "no better than a racket." But with the judiciary and investors cut out of the

process, they cannot do anything about it. Or so class counsel insists.

Frank asked the judge to do something, such as ordering counsel to disgorge unearned money or issuing an injunction blocking mootness fees in future cases. Before the district judge could rule, counsel for three of the six plaintiffs disclaimed their portions of the $322,500. The district judge then denied Frank's motion to intervene in those cases, stating that, because he did not anticipate awarding any of the remedies Frank requested, intervention would be "moot." Frank's appeals were orally argued in November 2018.

We put those appeals on hold pending the disposition of the three remaining cases, in which the lawyers wanted some share of the fund (which one of them was holding for the group's benefit). In these three cases, the district judge again denied Frank's motion to intervene but permitted him to participate as *amicus curiae*. The judge took to heart the admonition in *Walgreen* that suits seeking extra disclosure should be reviewed immediately after being filed. Acknowledging that he had not done that, he reopened the suits, concluded that the complaints were frivolous, and found that the extra disclosures were worthless to investors. In light of that finding the judge ordered counsel to return Akorn's money. *House v. Akorn, Inc.*, 385 F. Supp. 3d 616 (N.D. Ill. 2019). One of the three lawyers accepted that outcome. Two did not and have appealed. (Technically, the would-be representative plaintiffs have appealed, seeking an order that will let their lawyers divvy up the $322,500 pot.) Frank also has appealed, because he is still not a party and wants additional relief. These three final appeals were argued in April 2020, and all six appeals are now ready for decision.

Shaun House and Demetrios Pullos, the two plaintiffs who have appealed, contend that the district court lacked jurisdiction to reopen a dismissed case. The complaints had been dismissed, none of the litigants was unhappy, and there was nothing more for the court to do, they maintain. Although Fed. R. Civ. P. 60(b) allows judges to reopen cases, that must be done "on motion", according to the Rule, and none of the litigants had filed a motion. But this does not take Frank into account. If he should have been allowed to intervene, he will become a party and may file motions.

Plaintiffs insist that Frank lacks standing—and if Frank lacks standing, then House and Pullos also lack standing, for they will not recover a penny or obtain any other relief whether or not the attorneys collect fees. Their lack of interest in the outcome is so clear that we dismiss their appeals. Frank's standing remains to be decided.

Frank suffers some loss from diversion of corporate money, which affects the value of his shares. The diminution is minimal—$322,500 is small beer in a $4 billion transaction, something like 0.008% of the value of Frank's shares. Still, that is a few cents. The Supreme Court tells us that an "identifiable trifle" suffices for standing. *United States v. SCRAP*, 412 U.S. 669, 688–90 & n.14 (1973).

A concrete loss, caused by the complained-of conduct and remediable by the judiciary, supplies standing. See, e.g., *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). So we have held that a small loss caused by a brief inability to use a credit card after a data breach confers standing. See, e.g., *Dieffenbach v. Barnes & Noble, Inc*., 887 F.3d 826 (7th Cir. 2018); *Lewert v. P.F. Chang's China Bistro, Inc*., 819 F.3d 963 (7th Cir. 2016); *Remijas v.*

*Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015). We have held that even a few pennies' loss of potential interest (on a small non-interest-bearing deposit), see *Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019), or a brief delay in receiving income, *Brown v. CACH, LLC*, 94 F.4th 665 (7th Cir. 2024), amounts to a concrete injury. Only a "de minimis loss" threshold for standing would throw out Frank's contention, and the Supreme Court has not announced such a threshold.

Plaintiffs are mistaken to think that Frank needs to make a demand on the board of directors, and pursue a derivative action, rather than intervene personally. True, the $322,500 is a loss to the corporate treasury, but Frank does not contend that Akorn's directors violated their fiduciary duties. The mootness fees may well have cost Akorn less than what its own lawyers would have billed to defend the suits. This means that the directors did not violate either the duty of care or the duty of loyalty when paying to buy peace. Frank contends that class counsel violated their duties *to him* when they used the class allegations as leverage to obtain private benefits. The existence of duties to class members is clear after a judge certifies a class. See *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946–47 (9th Cir. 2011); *Back Doctors Ltd. v. Metropolitan Property & Casualty Insurance Co.*, 637 F.3d 827, 830–31 (7th Cir. 2011); *Martens v. Thomann*, 273 F.3d 159, 173 n.10 (2d Cir. 2001) (Sotomayor, J.) (citing *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 331 (1980)). There is no such duty if the judge has definitively ruled against certification. How things stand while certification is an open question is itself an open question. No matter how that question is resolved, however, Frank's contention that the representative plaintiffs and their lawyers owed duties to him, personally,

need not be processed through the mechanism for derivative litigation.

So was the district judge right to deny Frank's motion to intervene? Certainly not for the reason he gave. "I'm planning to reject your proposed remedies, so your request is moot" is not a recognized legal doctrine. A case becomes moot only when it is *impossible* to grant effective relief. See, e.g., *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). It was possible to grant the sort of relief Frank requested. A decision not to do so is one on the merits, not a conclusion that the case does not present a case or controversy under Article III (which is what it means to call it moot). If "you are going to lose, so your claim is moot" were a proper approach, unsuccessful suits would be dismissed as moot rather than on the merits. That's not how things are supposed to work. See, e.g., *Bell v. Hood*, 327 U.S. 678 (1946).

When the representative plaintiffs and the defendants strike a deal, intervention by a member of the class may be essential to protect the class's interests. We have told judges to grant intervention freely when a class member contends that the representatives (or, more realistically, their lawyers) are misbehaving. See, e.g., *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318–19 (7th Cir. 2012). Indeed, under some circumstances, class members are entitled to appellate review without intervention. See *Devlin v. Scardelletti*, 536 U.S. 1 (2002). Just being in the class entitles a dissatisfied member to appellate review of a contention that the putative representative has acted against the class's interests.

Frank sought to intervene both as of right under Fed. R. Civ. P. 24(a) and permissively under Rule 24(b). The motion

is timely; Frank acted soon after learning of the mootness fees. See *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 279–81 (2022). The district court addressed only his proposal to intervene as of right—and then only in three of the six cases. If the district judge had concluded that Frank lacks "a claim or defense that shares with the main action a common question of law or fact" (Rule 24(b)(1)(B)), appellate review would be deferential. But the district judge did not make any findings on this subject. It seems to us that, as an investor in Akorn whose shares' value was affected by the merger and the mootness fees, Frank has a claim in common with the main action; how could it be otherwise? After all, Frank is a member of the proposed classes. And since class counsel and Akorn are looking out for their own interests rather than those of the class, intervention is appropriate. We hold that Frank is entitled to participate as a party. And that could solve any problem with reopening the judgments, because as a party Frank would be entitled to make the motion required for relief under Rule 60(b). He will have that opportunity on remand.

But the remedies that Frank initially proposed, such as disgorgement or an injunction, are not satisfactory. Disgorgement would be appropriate only if the mootness fees had been retained by counsel, yet the district judge has ordered the money returned. An injunction against repetition might be appropriate with respect to the individual plaintiffs, but Frank wants relief against the lawyers, who are repeat players—and the lawyers are not parties, so they would not be proper objects of injunctive relief unless they were added as parties. And Frank recognizes that Rule 23(e) deals only with cases certified as class actions, which these were not. Perhaps the rules committees of the Judicial Conference should take a

look at the question whether judicial approval should be required to settle or dismiss cases brought as class actions, yet not so certified, but we must enforce the rule as it stands.

As this case proceeded, however, Frank turned his attention to the Private Securities Litigation Reform Act. Two of its provisions may affect the proper treatment of suits filed in quest of mootness fees. We have mentioned one—15 U.S.C. §78u–4(a)(6), which says that attorneys' fees "awarded" by a court "shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." This rule applies to all securities suits "brought" as class actions, whether or not they are so certified. See §78u–4(a)(1) ("The provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."). See also *Higginbotham v. Baxter International Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). Yet §78u–4(a)(6) does not do any work when the defendant pays fees voluntarily rather than insisting on a judicial award.

The other statute, 15 U.S.C. §78u–4(c)(1), tells us:

> **Mandatory review by court**[.] In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

"This chapter" means the whole Securities Exchange Act of 1934 (which is Chapter 2B of Title 15), and the six suits invoked that statute. The caption calls this review "mandatory," and the word "shall" tells us that the caption is accurate. The district court must make the required findings whether or not

a litigant asks. *City of Livonia Employees' Retirement System v. Boeing Co.*, 711 F.3d 754, 757, 761 (7th Cir. 2013). Accord, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009); *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 283–84 (4th Cir. 2006).

The dismissal of each suit was a "final adjudication of the action"; settlements were the reasons for the dismissals, but the statute applies to the judicial action, not to the reason for it. It obliges the judge to determine whether each suit was proper at the moment it was filed. The statute directs the court to the criteria of Fed. R. Civ. P. 11, which entails notice and an opportunity to be heard. Those steps have not been put in motion, given the denial of Frank's motion to intervene, but they should occur on remand.

Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

From Frank's perspective, the very purpose of these suits was "needlessly [to] increase the cost of litigation" (Rule 11(b)(1)) in order to induce Akorn to pay the lawyers to go away. He contends that the suits violate the other three paragraphs as well. And that is essentially what the district judge found when he finally looked at the complaints.

On the current record we are inclined to agree with the district judge's analysis. He wrapped up:

> [T]he Court finds that the disclosures sought in the three complaints at issue [the three for which counsel declined to waive their share of the mootness fees] were not "plainly material" and were worthless to the shareholders. Yet, Plaintiffs' attorneys were rewarded for suggesting immaterial changes to the proxy statement. Akorn paid Plaintiffs' attorney's fees to avoid the nuisance of ultimately frivolous lawsuits disrupting the transaction with [Fresenius]. The settlements provided Akorn's shareholders nothing of value, and instead caused the company in which they hold an interest to lose money. The quick settlements obviously took place in an effort to avoid the judicial review this decision imposes. This is the "racket" described in *Walgreen*, which stands the purpose of Rule 23's class mechanism on its head; this sharp practice "must end." 832 F.3d at 724.
>
> Plaintiffs' cases should have been "dismissed out of hand." *See id*. at 724. Since the Court failed to take that action, the Court exercises its inherent authority to rectify the injustice that occurred as a result. The settlement agreements are abrogated and the Court orders Plaintiffs' counsel to return to Akorn the attorney's fees provided by the settlement agreements. Plaintiffs' counsel should file a status report by July 8, 2019 certifying that the fees have been returned.

385 F. Supp. 3d at 622–23 (one citation omitted). The district court's reference to "inherent authority" should have been to §78u–4(c)(1) and Rule 11, but with that change the analysis holds. Still, our reference to "the current record" is important; a formal motion under Rule 60(b) is necessary, and counsel are entitled to be heard.

Because Rule 11(c)(4) gives the district judge discretion over the choice of sanction, the court would be entitled to direct counsel who should not have sued at all to surrender the money they extracted from Akorn. But selecting an appropriate remedy (if any) should await resolution of the proceedings under §78u–4(c)(1) and, derivatively, Rule 11.

The orders of the district court denying Frank's motion to intervene are vacated, and the cases are remanded with instructions to treat him as an intervenor, permit him to make a motion under Rule 60(b), and decide what relief, if any, is appropriate in light of that motion should one be made. The appeals by House and Pullos are dismissed for lack of jurisdiction because they have not explained how, if at all, the district court's orders adversely affect them, as opposed to counsel.